**CHASAN & WALTON, LLC**
ANDREW M. CHASAN, ISB #2100
E-mail: andrew.chasan@chasanwalton.com
TIMOTHY C. WALTON, ISB #2170
E-mail: timwalton2000@hotmail.com
P.O. Box 1069
Boise, Idaho 83701
Phone: 208-345-3760
Fax:    208-345-0288

**O'DONNELL CLARK & CREW, LLP**
GILION C. DUMAS, ISB #8176
E-mail: giliond@oandc.com
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, OR 97209
Phone:  503-306-0224
Fax:     503-306-0257

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOE I, JOHN DOE II, JOHN DOE III, AND JOHN DOE IV, <br><br> Plaintiffs, <br><br> v. <br><br> BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to do business in Idaho, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br> (*Constructive Fraud*) <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs allege:

## IDENTITY OF THE PARTIES

1.

Plaintiffs JOHN DOES I–IV's true names are not stated in this Complaint in order to protect them from further emotional harm because this Complaint makes allegations involving child sexual abuse.  Their true names will be provided to the Court as may be required by law.

2.

Plaintiff JOHN DOE I is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE I was a resident of Idaho.  Plaintiff JOHN DOE I is now a resident of Washington.

3.

Plaintiff JOHN DOE II is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE II was a resident of Idaho.  Plaintiff JOHN DOE II is now a resident of Idaho.

4.

Plaintiff JOHN DOE III is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE III was a resident of Idaho.  Plaintiff JOHN DOE III is now a resident of Idaho.

/ / / /

/ / / /

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

5.

Plaintiff JOHN DOE IV is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BSA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff JOHN DOE IV was a resident of Idaho.  Plaintiff JOHN DOE IV is now a resident of Washington.

6.

At all times relevant to this Complaint, Defendant BOY SCOUTS OF AMERICA ("Defendant BSA") was a congressionally chartered foreign corporation incorporated and with its principal place of business in Texas, and operating in Idaho.  At all times relevant to this Complaint, BSA operated various outdoor, citizenship, service, and character building training programs ("Scouting") for boys in Idaho, including Plaintiffs in this case.

7.

At all times relevant to this Complaint, Defendant CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS was a foreign religious corporation sole of the Church of Jesus Christ of Latter-Day Saints ("LDS Church") incorporated and with its principal place of business in Utah, and operating in Idaho.

8.

At all times relevant to this Complaint, Defendant CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS was a foreign religious corporation of the LDS Church incorporate and with its principal place of business in Utah, and operating in Idaho.  The Defendant CORPORATION OF THE PRESIDING BISHOP and Defendant CORPORATION OF THE PRESIDENT will be

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

referred to collectively throughout this Complaint as "LDS Defendants."  Defendant BSA and

LDS Defendants will be referred to collectively throughout this Complaint as "Defendants."

9.

The amount in controversy exceeds $75,000 for each Plaintiff, with the exact amounts to

be determined by a jury at trial.

10.

At all times relevant to this Complaint, Scouting was an integral part of the LDS

Defendants' program for raising, teaching, and guiding boys and men within the LDS Church.

Scouting was the official program for boys in the LDS Church, and many boys growing up in the

LDS Church were required or strongly encouraged to join Scouting.  On information and belief,

Scouting was an official part of the Aaronic Priesthood for young men under 21 in the LDS

Church.  Men within the LDS Church were also either required or strongly encouraged to be

Scout leaders as part of their religious growth and experience in the LDS Church.  Wards were

the basic ecclesiastical unit of the LDS Church, and each ward was presided over by a Bishop.

The Bishop had many tasks including, on information and belief, selecting and supervising Scout

leaders within the LDS Church.  On information and belief, every ward was supposed to

maintain a Scout troop.

11.

At all material times to this Complaint, BSA was a vertically-integrated organization.

The national BSA organization was at the top of the structure.  BSA national established goals,

standards, and rules for leaders at the lower levels to follow, and BSA national relied upon local

employees and volunteers to implement its goals, standards, and rules.  The lower levels of BSA

included sponsoring organizations, local councils, troop committees, and troops.  Defendant

BSA and LDS Defendants jointly agreed to control and operate Scout troops, such as those

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

troops Plaintiffs were members of, in Idaho.  Troops operated at the lowest level of Scouting, and many Scout troops were "sponsored" by the LDS Defendants through individual wards in the LDS Church.  Defendant BSA and LDS Defendants jointly selected, approved, and/or retained adult volunteers to lead Scout troops, in positions such as Assistant Scoutmasters or Scoutmasters ("Scout leaders").  Defendant BSA possessed the right of final approval of adult volunteers as Scout leaders, including adult volunteers that were also members of the LDS Church.  In the course of operating Scout troops, Defendants also had the right to control the physical details of Scout leaders' performance of their duties on behalf of  Defendants.  In performing these duties for Defendants, Scout leaders were acting in the time and space limits of their agency with Defendants, were motivated at least in part by a desire to serve Defendants, and these actions were of a type that they were required to do on behalf of the Defendants.

### FACTS SPECIFIC TO JOHN DOE I

12.

Plaintiff JOHN DOE I realleges and incorporates by reference paragraphs 1–11.

13.

JOHN DOE I was born in 1970.

14.

At all times relevant to this Complaint, JOHN DOE I was a child involved in Scouting and participated in a Scout troop that was sponsored by the LDS Defendants.  JOHN DOE I was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

15.

When JOHN DOE I was approximately 12 years old, in or around the spring and summer

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

of 1982, JAMES SCHMIDT ("SCHMIDT"), a Scout leader, began sexually abusing him. SCHMIDT'S sexual abuse of JOHN DOE I included sodomy and other acts of physical, sexual, and emotional abuse. SCHMIDT also abused JOHN DOE I's cousin, a member of SCHMIDT's Scout troop. Their abuse occurred during a time when JOHN DOE I's parents were briefly living in Alaska, and JOHN DOE I was living with his cousin's family. SCHMIDT forced JOHN DOE I to watch SCHMIDT's sexual abuse of JOHN DOE I's cousin, and SCHMIDT forced JOHN DOE I and his cousin to perform sexual acts on each other while SCHMIDT watched. This abuse occurred multiple times and lasted for approximately 6 months. The abuse occurred on BSA camping trips, at a ward building owned and operated by LDS Defendants, and in the attic of Defendant BSA's Council Headquarters, located in Boise, Idaho.

16.

All Defendants had notice beginning in 1979 that SCHMIDT—Plaintiffs JOHN DOES I–II's abuser—was a pedophile and was abusing Scouts. In 1983 SCHMIDT was arrested by Caldwell, Idaho police after the police interviewed 16 Scouts and their parents who documented an undisclosed number of cases in which SCHMIDT had sexually abused minors. After the investigation, he was court-ordered to complete treatment for "severe pedophilia" at John Hopkins Hospital in Baltimore, Maryland.

### FACTS SPECIFIC TO JOHN DOE II

17.

Plaintiff JOHN DOE II realleges and incorporates by reference paragraphs 1–16.

18.

JOHN DOE II was born in 1973.

19.

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

At all times relevant to this Complaint, JOHN DOE II was a child involved in Scouting, in the BSA Caldwell 5th Ward, that was sponsored by the LDS Defendants. JOHN DOE II was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

20.

JOHN DOE II's Scout leader, SCHMIDT, began abusing him when he was 12 years old, in or around 1985. SCHMIDT's sexual abuse included fondling of JOHN DOE II's penis, testicles, and anus, and other physical, sexual, and emotional abuse. This abuse continued for approximately 2 years, until JOHN DOE II was 14 years old. The abuse occurred on BSA camping trips.

**FACTS SPECIFIC TO JOHN DOE III**

21.

Plaintiff JOHN DOE III realleges and incorporates by reference paragraphs 1–20.

22.

JOHN DOE III was born in 1967.

23.

At all times relevant to this Complaint, JOHN DOE III was a child involved in Scouting in a Scout troop sponsored by LDS Defendants. JOHN DOE III was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

24.

During the Summer of 1981, when JOHN DOE III was approximately 14 years old, JOHN DOE III's Scout troop went to Camp Morrison. JOHN DOE III was sexually abused by DENNIS EMPEY ("EMPEY") for a week at Camp Morrison, and the abuse occurred

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

approximately 4 times.  The abuse included sexual fondling, and other types of physical, sexual, and emotional abuse.

25.

Defendant BSA placed EMPEY in its Ineligible Volunteer Files ("IV Files"), as described in paragraph 32, for molesting Scouts in 1988.  Letters in EMPEY'S IV File document that one of the victims—a member of the LDS Church—told his father in 1987 that Empey had abused him in 1981 at an LDS Chapel in Idaho Falls.  No one from BSA reported this incident to the police.  In 1991, EMPEY was convicted for molesting children in Provo, Utah.  In 1991, EMPEY moved back to Idaho and was hired by the Teton Council of BSA to do graphic design work.  In association with another case in Idaho in 2005, a man filed an affidavit stating that EMPEY had molested him in 1983 at the Island Park Scout Camp.

## FACTS SPECIFIC TO JOHN DOE IV

26.

Plaintiff JOHN DOE IV realleges and incorporates by reference paragraphs 1–25.

27.

JOHN DOE IV was born in 1960.

28.

At all times relevant to this Complaint, JOHN DOE IV was a child involved in Scouting, in Scout Troop 176 in Lewiston, Idaho, that met at the Orchards Baptist Church and, on information and belief, was sponsored by the Elk Club.  JOHN DOE IV was under the care, custody, protection, and/or responsibility of BSA during the time he was involved in Scouting.

29.

When JOHN DOE IV was approximately 12 years old in or around 1972, his Scoutmaster LAWRENCE LIBEY ("LIBEY") began sexually abusing him.  LIBEY'S sexual

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

abuse of JOHN DOE IV included fondling, oral sex, sodomy, forcing JOHN DOE IV to have sex

with another boy, and other acts of physical, sexual, and emotional abuse.  This abuse occurred

hundreds of times and lasted for approximately 6 years.


## DEFENDANTS' KNOWLEDGE OF SEXUAL ABUSE IN SCOUTING

30.

Plaintiffs reallege and incorporate by reference paragraphs 1–29.

31.

Not later than 1965, Defendant BSA knew that Scouting posed a danger to minor boys

because there had been a concrete, longstanding, consistent, and widespread problem with Scout

leaders sexually abusing Scouts.  Defendant BSA knew that Scouting was being used and

exploited by child molesters to gain access to and gain the trust of Scouts, including Plaintiffs.

Yet, Defendant BSA did nothing significant to alter the program, to ameliorate the sexual abuse

problem, or to warn Scouts, Scouts' parents, other troop-level leaders, or the general public prior

to and even after the time of Plaintiffs' abuse.

32.

Beginning in or around 1920, Defendant BSA started tracking incidences of child

molestation by adult volunteers in Scouting.  Defendant BSA created a file system then known

as the "Red Flag" files—now the "Ineligible Volunteer" files ("IV files")— to track a variety of

transgressions by adult volunteers, including child abuse.  The IV Files are categorized

according to the type of transgression committed, for example, "moral" or "financial"

transgressions.  IV Files that reflect child sexual abuse allegations against adult volunteers are

categorized as "Perversion" files.  On information and belief, the Perversion IV Files have

predominantly constituted a majority or plurality of the total IV Files.  Between 1920 and 1935,

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

at least 1,000 child molesters—between 50–60 per year—were discovered and subsequently

excluded from Scouting.  Now, at least 1,365 IV Perversion files still exist that were created

between 1960 and 1985, with 25–96 IV Perversion files created per year during that time frame.

However, the number of IV Perversion Files still existing significantly underrepresent the actual

number of adult volunteers that molested Scouts because Defendant BSA has destroyed many IV

Files for a variety of reasons, and because many children do not report their abuse.

33.

In Idaho alone, at least 7 Scout leaders were accused of molesting Scouts or other youth

between 1962 and 1977.  Between 1978 and 1983, at least 3 additional Idaho Scout leaders were

accused of molesting Scouts or other youth. All of these Scout leaders operated in various

councils in Idaho; at least 6 of them operated within the Ore-Ida Council.  In addition to knowing

about the decades of sexual abuse by Scout leaders in Scouts prior to or during Plaintiffs' abuse,

Defendant BSA became aware of all or most of the accusations regarding these specific Scout

leaders by 1982.

34.

Prior to or during Plaintiffs' abuse, on information and belief, LDS Defendants were also

aware of the risk that Scouts could be molested by Scout leaders, including by LDS Scout

leaders and Scout leaders in LDS-sponsored troops.  In Idaho, LDS Defendants had notice prior

to Plaintiffs' abuse that at least 1 LDS Scout leader in an LDS-sponsored troop within the Ore-

Ida Council of BSA had been accused of molesting Scouts.

35.

Prior to Plaintiffs' abuse, Defendants knew to a moral certainty that at least some

significant number of Scouts—including Scouts such as Plaintiffs—would be molested each and

every year if Scouting remained structured as it was.

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

## CLAIM FOR RELIEF
### (Constructive Fraud)

## COUNT I
### Plaintiffs JOHN DOES I–III against all Defendants

36.

Plaintiffs reallege and incorporate by reference paragraphs 1–35.

37.

At all times relevant to this Complaint, Defendants invited and encouraged Plaintiffs to participate in the Scouting program they jointly administered and controlled.  Their invitation created a special, fiduciary relationship, wherein these Plaintiffs and their parents relied upon Defendants' years of expertise and judgment in selecting morally upright and trustworthy men to lead Scouting activities.  These Plaintiffs and their parents gave Defendants authority to act *in loco parentis* over Plaintiffs at BSA meetings, camping trips, hiking trips, and in private social situations during Scouting activities.  Defendant BSA also invited Plaintiffs to enter into a commercial relationship by requiring Scouts to pay yearly dues and other assorted fees and required purchases, in exchange for participating in Scouting.

38.

Defendants represented that the Scout leaders they selected, controlled, and/or approved were appropriate and trustworthy mentors and leaders for young boys, merely by selecting, approving, and/or retaining certain men as Scout leaders.  They also promoted Scouting as being safe and beneficial for boys—physically, emotionally, and spiritually.  Defendants claimed Scouting was a wholesome institution and emphasized the friendly and paternalistic role a Scout leader should play in a young boy's life.  As examples Defendant BSA made specific statements in various editions of the Boy Scout Handbook—the handbook that every Scout is given and

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

uses as a guide to his Scouting experience.  The Scout Oath was and remains: "On my honor I will do my best to do my duty to God and my country and to obey the Scout law; To help other people at all times; To keep myself physically strong, mentally awake, and morally straight." The Scout law then describes the characteristics a Scout should have: a Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent. These were ideals that both Scouts and Scout leaders were expected to follow.  In the 1965–1972 *Boy Scout Handbook*, the Scoutmaster is referred to as "a wonderful man" who goes on hikes and goes camping with the Troop, and who "is the friend to whom you can always turn for advice."  Defendant BSA, *Boy Scout Handbook*, at 94 (7th ed., 3rd printing, 1967).  The 1972–1978 *Boy Scout Handbook*, BSA stated, "[o]ver there watching things is your Scoutmaster. He's a great guy.  He gives hours of his time to you and the troop.  And do you know why? Mostly because he knows Scouting is important to his city and nation.  Besides, he is interested in boys."  Defendant BSA, *Boy Scout Handbook*, at 9 (8th ed., 2nd printing, 1973).  This edition also told Scouts: "Your Scoutmaster is interested in and wants to know about you.  Only then can he help you to have fun in Scouting. . . . . [Y]our Scoutmaster wants to know you better.  He wants to see what you have to bring to the troop.  Soon after joining you will have your first personal growth agreement conference.  Here you and your Scoutmaster will sit down for a talk. Tell him about yourself. . . .  Your Scoutmaster will probably ask about the things you like to do. . . .  Your Scoutmaster will also want to know what things you do well."  *Id.* at 82–83.  In the 1978–1990 *Boy Scout Handbook*, BSA tells Scouts that "First, there's your Scoutmaster.  He spends hours planning the fun and adventure you will have in your troop. He is present at every troop meeting and goes hiking and camping with the troop. He is the friend to whom you can always turn for advice.  He coaches the patrol leaders. He gives his time and effort without pay. Why does he do all this?  Because he believes in scouting. Because he likes boys and wants to

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

help them become real men." Defendant BSA, *Boy Scout Handbook*, at 20–21 (9th ed., 1st

printing, 1979).  This list of representations is not exhaustive.

39.

Defendants knew that, historically and increasingly, a significant number of Scout

leaders had abused Scouts; therefore, Defendants knew that not all Scout leaders were

trustworthy, morally upright, role models, and mentors.

40.

LDS Defendants also promoted Scouting as a wholesome, safe, and beneficial program

for boys, by sanctioning Scouting as the official program for boys within the LDS Church.  By

selecting men within the LDS Church to serve as Scout leaders, LDS Defendants represented

that those men were trustworthy and morally upright leaders and mentors.  Young boys that were

members of the LDS Church were required or strongly encouraged to join Scouting as part of

their growth and development within the Church.  For example, in 1978, the president of the

LDS Church said that "This [BSA] is not an optional program...Scouting is no longer on trial.  It

is an economically, socially, and spiritually sound program."  The LDS Church also was the first

chartering organization within BSA.  In 1928, the LDS Church named Scouting as the activity

program for Deacons and teachers (boys ages 12–16 years old) in the LDS Church.  The LDS

Church and BSA continue to be closely integrated organizations—for example, the LDS Church

is the largest sponsor of Boy Scout troops in BSA, BSA has an entire LDS-BSA Relationships

department, and many key leaders within the LDS Church serve on BSA boards and in other

leadership positions in BSA.

41.

Defendants fraudulently misrepresented, failed to disclose, and/or actively concealed the

dangers and prevalence of child molesters in Scouting.   Defendants' representations regarding

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224 Fax 503-306-0257

Page 13 –    **COMPLAINT**

the wholesomeness, trustworthiness, and mortal integrity of Scouting and Scout leaders were, at best, partial representations of the facts, which should have been corrected or supplemented by the additional contrary information regarding the propensity of sexual abuse in Scouting that was in Defendants' possession.

42.

Plaintiffs read, digested, and integrated one or more of the *Boy Scout Handbook* versions into their Scouting experience during their time in Scouting, and similar information and propaganda promulgated by Defendants.  Plaintiffs also digested the LDS Defendants' misrepresentations about the benefits and nature of Scouting and Scout leaders within the LDS Church.  Plaintiffs relied upon Defendants' misrepresentations regarding Scouting and Scout leaders in deciding whether to join and continue to participate in Scouting.

43.

Defendants had a duty to disclose known threats to the health and safety of the minors involved with their organizations because Defendants had a special relationship of trust and confidence with Plaintiffs, and Defendants exercised *in loco parentis* responsibilities over Scouts, including Plaintiffs.  Alternatively or in addition to the duty arising from a special relationship, Defendant BSA's invitation to Plaintiffs to participate in Scouting upon payment of fees required Defendant BSA to disclose all matters vital to entering into a commercial transaction.  The relative incidence of child molestation by Scout Leaders was vital and material information relevant to Plaintiffs entering into the transaction and maintaining their membership with Defendant BSA.  Further, alternatively or in addition to the aforementioned duties, Defendants actively concealed the problem of child molestation by Scout leaders, and Plaintiffs did not and could not obtain access to this information.  Due to Plaintiffs' inability to discover the truth and Defendants' full knowledge of it, Defendants were thus required to disclose the

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

prevalence of molestation by Scout leaders.

44.

Defendants' knowledge of the dangers and prevalence of child molesters in Scouting constituted a material fact because Plaintiffs would not have entered into a relationship with or continued a relationship with Defendants and the Scouting program, including their individual abusers or other volunteers, employees, and agents of Defendants, had Plaintiffs and their parents been aware of such dangers.

45.

Despite the special relationship that Defendants maintained with Plaintiffs, prior to and during Plaintiffs' time in Scouting, Defendant BSA never made any warnings or issued any warnings in the *Boy Scout Handbook*, in materials to Plaintiffs' parents, in the Scout application and registration materials, or elsewhere in BSA materials that Scout leaders were not always safe and trustworthy, that they might make sexual demands or advances, or that significant numbers of Scout leaders had abused boys in the past.  Similarly, LDS Defendants did not warn Scouts that Scout leaders—even those involved in the LDS Church—were not always safe, trustworthy, and spiritually sound leaders, that these Scout leaders may make sexual demands or advances, or that a significant number of Scout leaders had abused boys in the past.  This list of omissions is not exclusive.  Despite their knowledge of the use of Scouting by child molesters as described in paragraphs 30–35, Defendants knowingly failed to change the Scouting program in any meaningful way to attempt to reduce the number of Scouts abused by Scout leaders until after Plaintiffs' time in Scouting, and nonetheless concealed this material fact.  These failures to disclose the known danger of abuse by Scout leaders will be referred to in this Complaint as "constructive fraud."

46.

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

Defendants knew that their constructive fraud consisted of false representations, or Defendants made their constructive fraud with reckless disregard for the truth. Defendants made their constructive fraud with the intent of inducing Plaintiffs (and other children similarly situated), Plaintiffs' parents or guardians (and other parents and guardians similarly situated), and the community at large to rely on their constructive fraud; continue to trust Scouting and Scout leaders; and continue to participate in Scouting. Defendants also intended their constructive fraud to shield Scouting from scrutiny to ensure that children continued to join, for both a financial and reputational benefit.

47.

Plaintiffs and their parents justifiably and reasonably relied on their constructive fraud in allowing Plaintiffs to join Scouting, remain in Scouting, and engage in a trust relationship with their various Scout leaders. The reliance of Plaintiffs and their parents was justified because they did not know, nor could they have known, that Defendant BSA had a known, decades-long history of child molesters using Scouting to obtain victims. Plaintiffs and their parents similarly did not know, nor could they have known, that the LDS Defendants also had a history of Scout leaders within the LDS Church abusing Scouts. Plaintiffs and their parents justifiably and reasonably relied on Defendants' constructive fraud, as well as Defendants' conduct in maintaining the same rules for the Scouting program over time, and to believe that Scouting did not pose a known danger to Scouts. This reliance was justified because Plaintiffs and their parents could not hope to conduct an investigation of Defendants' claims that Scoutmasters were safe and trustworthy, given that the records that would disprove the constructive fraud—*e.g.* Defendant BSA's IV Files—were not available to the public until decades later.

48.

Within the past three years Plaintiffs JOHN DOES I–III have discovered that throughout

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon 97209
Phone 503-306-0224  Fax 503-306-0257

the time they were involved in the Scouting program and until at least 2010, Defendants

perpetrated a fraud related to the dangers of Scout leaders molesting children in the Scouting

program.  Prior to each Plaintiff's discovery of Defendants' fraud, each Plaintiff did not know

and could not know that Defendants' representations, or lack thereof, regarding the

trustworthiness of Scout leaders and the safety of the Scouting program were false, and that

Defendants knew the Scouting program was structured in such a way that molestation of Scouts

by Scout leaders was certain to occur to some degree within the Scouting program.  Relying on

Defendants' representations, each Plaintiff joined Scouting and trusted his Scout leaders.

49.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious,

and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff

JOHN DOE I was seriously injured and damaged.  Plaintiff's injuries prevail and will continue

to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature,

extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive,

and disabling.  Plaintiff JOHN DOE I has incurred and will likely continue to incur damages.

These damages include both physical and emotional injury.  These damages include special and

general damages to be proved at the time of trial, all to Plaintiff JOHN DOE I's general damages

in an amount now unknown.  Plaintiff's damages include but are not limited to emotional and

physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

50.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious,

and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff

JOHN DOE II was seriously injured and damaged.  Plaintiff's injuries prevail and will continue

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

to prevail for an indefinite time into the future. It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling. Plaintiff JOHN DOE II has incurred and will likely continue to incur damages. These damages include both physical and emotional injury. These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE II's general damages in an amount now unknown. Plaintiff's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

51.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff JOHN DOE III was seriously injured and damaged. Plaintiff's injuries prevail and will continue to prevail for an indefinite time into the future. It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling. Plaintiff JOHN DOE III has incurred and will likely continue to incur damages. These damages include both physical and emotional injury. These damages include special and general damages to be proved at the time of trial, all to Plaintiff JOHN DOE III's general damages in an amount now unknown. Plaintiff's claimed damages include but are not limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for past and future therapy.

**COUNT II**
**Plaintiff JOHN DOE IV against Defendant BSA**

52.

Plaintiff realleges and incorporates by reference paragraphs 1–51.

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon 97209
Phone 503-306-0224  Fax 503-306-0257

53.

At all times relevant to this Complaint, Defendant BSA invited and encouraged Plaintiff to participate in the Scouting program it administered and controlled. Its invitation created a special, fiduciary relationship, wherein Plaintiff and his parents relied upon Defendant BSA's years of expertise and judgment in selecting morally upright and trustworthy men to lead Scout troops and other Scouting activities, such as BSA Camps. Plaintiff and his parents gave Defendant BSA authority to act *in loco parentis* over Plaintiff at BSA meetings, camping trips, hiking trips, and in private social situations during Scouting activities. Defendant BSA also invited Plaintiff to enter into a commercial relationship by requiring him to pay yearly dues and other fees and required purchases, in exchange for participating in Scouting.

54.

Defendant BSA represented that the Scout leaders it selected, controlled, and/or approved were appropriate and trustworthy mentors and leaders for young boys. It also promoted Scouting as being safe and beneficial for boys—physically, emotionally, and spiritually. Defendant BSA claimed Scouting was a wholesome institution and emphasized the friendly and paternalistic role a Scout leader should play in a young boy's life. As examples, Defendant BSA made specific statements in various editions of the *Boy Scout Handbook*—the handbook that every Scout is given and uses as a guide to his Scouting experience. The Scout Oath was and remains: "On my honor I will do my best to do my duty to God and my country and to obey the Scout law; To help other people at all times; To keep myself physically strong, mentally awake, and morally straight." The Scout law then describes the characteristics a Scout should have: a Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent. These were ideals that both Scouts and Scout leaders were expected to follow. In the 1965–1972 *Boy Scout Handbook*, the Scoutmaster is referred to as "a wonderful

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon 97209
Phone 503-306-0224  Fax 503-306-0257

Page 19 –     **COMPLAINT**

man" who goes on hikes and goes camping with the Troop, and who "is the friend to whom you can always turn for advice." Defendant BSA, Boy Scout Handbook, at 94 (7th ed., 3rd printing, 1967). In the 1972–1978 *Boy Scout Handbook*, BSA stated, "[o]ver there watching things is your Scoutmaster. He's a great guy. He gives hours of his time to you and the troop. And do you know why? Mostly because he knows Scouting is important to his city and nation. Besides, he is interested in boys." Defendant BSA, Boy Scout Handbook, at 9 (8th ed., 2nd printing, 1973). This edition also told Scouts: "Your Scoutmaster is interested in and wants to know about you. Only then can he help you to have fun in Scouting. [Y]our Scoutmaster wants to know you better. He wants to see what you have to bring to the troop. Soon after joining you will have your first personal growth agreement conference. Here you and your Scoutmaster will sit down for a talk. Tell him about yourself. … Your Scoutmaster will probably ask about the things you like to do. … Your Scoutmaster will also want to know what things you do well." Id. at 82-83. In the 1978–1990 *Boy Scout Handbook*, BSA tells Scouts that "First, there's your Scoutmaster. He spends hours planning the fun and adventure you will have in your troop. He is present at every troop meeting and goes hiking and camping with the troop. He is the friend to whom you can always turn for advice. He coaches the patrol leaders. He gives his time and effort without pay. Why does he do all this? Because he believes in scouting. Because he likes boys and wants to help them become real men." Defendant BSA, Boy Scout Handbook, at 20-21 (9th ed., 1st printing, 1979). This list of Defendant BSA's representations is not exhaustive. Plaintiff read, digested, and integrated one or more of the *Boy Scout Handbook* editions, as well as other BSA materials, into his Scouting experience during his time in Scouting.

55.

Defendant BSA knew that, historically and increasingly, a significant number of Scout leaders had abused Scouts; therefore, Defendant BSA knew that not all Scout leaders were

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

trustworthy and morally upright, and appropriate role models and mentors.

56.

Defendant BSA fraudulently misrepresented, failed to disclose, and/or actively concealed the dangers and prevalence of child abuse in Scouting.   Defendant BSA's representations regarding the trustworthiness and mortal integrity of Scout leaders were, at best, partial representations of the facts, which should have been corrected or supplemented by the contrary information of the propensity of sexual abuse in Scouting in Defendant BSA's possession.

/ / / /

57.

Defendant BSA had a duty to disclose known threats to the health and safety of the minors involved with its organization because Defendant BSA had a special relationship of trust and confidence with JOHN DOE IV, and exercised *in loco parentis* responsibilities over Scouts, including JOHN DOE IV.  Alternatively or in addition to the duty arising from *in loco parentis* status, Defendant BSA's invitation to JOHN DOE IV to participate in Scouting upon payment of fees required Defendant BSA to disclose all matters vital to entering into a commercial transaction.  The relative incidence of child molestation by Scout Leaders was vital and material information relevant to JOHN DOE IV entering into the transaction with Defendant BSA. Further, alternatively or in addition to the aforementioned duties, Defendant BSA actively concealed the problem of child molestation by Scout leaders, and JOHN DOE IV and his parents did not and could not obtain access to this information.  Due to their inability to discover the truth and Defendant BSA' full knowledge of it, Defendant BSA was required to disclose the prevalence of molestation by Scout leaders.

58.

Defendant BSA's knowledge of the dangers and prevalence of child molesters in

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

Scouting as described in paragraphs 30–35 constituted a material fact because JOHN DOE IV

would not have entered into a relationship with or continued a relationship with Defendant BSA

and the Scouting program, including the individual abusers or other volunteers, employees, and

agents of Defendant BSA, had JOHN DOE IV and his parents been aware of such dangers.

59.

Despite the special relationship that Defendant BSA maintained with JOHN DOE IV,

prior to and during JOHN DOE IV's time in Scouting, Defendant BSA never made any warnings

or issued any warning in the *Boy Scout Handbook*, in materials to JOHN DOE IV'S parents, in

the Scout application and registration materials, or elsewhere in BSA materials that Scout leaders

were not always safe and trustworthy, that they might make sexual demands or advances, or that

significant numbers of Scout leaders had abused boys in the past.  This list of omissions is not

exclusive.  Despite its knowledge of the use of Scouting by child molesters, Defendant BSA

knowingly failed to change the Scouting program in any meaningful way to attempt to reduce the

number of Scouts abused by Scout leaders until after JOHN DOE IV's time in Scouting, and

nonetheless concealed this material fact.

60.

Defendant BSA knew that its constructive fraud consisted of  false representations, or

Defendant BSA made its constructive fraud with reckless disregard for the truth.  Defendant

BSA made its constructive fraud with the intent of inducing JOHN DOE IV (and other children

similarly situated), JOHN DOE IV'S parents or guardians (and other parents and guardians

similarly situated), and the community at large to rely on its constructive fraud; continue to trust

Scouting and Scout leaders; and continue to participate in Scouting.  Defendant BSA also

intended its constructive fraud to shield Scouting from scrutiny to ensure that children continued

to join, for both a financial and reputational benefit.

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

61.

JOHN DOE IV and his parents justifiably and reasonably relied on Defendant BSA's constructive fraud in allowing JOHN DOE IV to join Scouting, remain in Scouting, and engage in a trust relationship with his various Scout leaders, such as LIBEY.  The reliance of JOHN DOE IV and his parents was justified because they did not know, nor could they have known, that Defendant BSA had a known, decades-long history of child molesters using Scouting to obtain victims.  JOHN DOE IV and his parents justifiably and reasonably relied on Defendant BSA's constructive fraud, as well as Defendant BSA's conduct in maintaining the same rules for the Scouting program over time, and to believe that Scouting did not pose a known danger to Scouts.  This reliance was justified because JOHN DOE IV and his parents could not hope to conduct an investigation of Defendants' claims that Scoutmasters were safe and trustworthy, given that the records that would disprove the constructive fraud—*e.g.*, Defendant BSA's IV Files—were not available to the public until decades later.

62.

Within the past three years, Plaintiff JOHN DOE IV has discovered that throughout the time he was involved in the Scouting program and until at least 2010, Defendant BSA perpetrated a fraud related to the dangers of Scout leaders molesting children in the Scouting program.  Prior to JOHN DOE IV's discovery of Defendant BSA's fraud, he did not know and could not know that Defendant BSA's representations, or lack thereof, regarding the trustworthiness of Scout leaders and the safety of the Scouting program were false, and that Defendant BSA knew the Scouting program was structured in such a way that molestation of Scouts by Scout leaders was certain to occur to some degree within the Scouting program.

63.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious,

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, JOHN

DOE IV was seriously injured and damaged.  JOHN DOE IV's injuries prevail and will continue

to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature,

extent, severity and duration of said injuries, but they are alleged to be permanent, progressive,

and disabling.  JOHN DOE IV has incurred and will likely continue to incur damages.  These

damages include both physical and emotional injury, including but not limited to guilt, shame,

depression, difficulty with intimate relationships, and sexual difficulties.  These damages include

special and general damages to be proved at the time of trial, all to JOHN DOE IV's general

damages in an amount now unknown.  JOHN DOE IV's claimed damages include but are not

limited to emotional and physical pain and suffering, mental anguish, disability, and expenses for

past and future therapy.

     **WHEREFORE**, Plaintiffs pray for judgment as follows:

     1.     Non-economic damages by all Defendants for Plaintiff JOHN DOE I, the exact

amount to be determined by the jury at the time of trial;

     2.     Economic damages by all Defendants for Plaintiff JOHN DOE I, the exact

amount to be determined by the jury at the time of trial;

     3.     Non-economic damages by all Defendants for Plaintiff JOHN DOE II, the exact

amount to be determined by the jury at the time of trial;

     4.     Economic damages by all Defendants for Plaintiff JOHN DOE II, the exact

amount to be determined by the jury at the time of trial;

     5.     Non-economic damages by all Defendants for Plaintiff JOHN DOE III, the exact

amount to be determined by the jury at the time of trial;

     6.     Economic damages by all Defendants for Plaintiff JOHN DOE III, the exact

amount to be determined by the jury at the time of trial;

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257

7.      Non-economic damages by Defendant BSA for Plaintiff JOHN DOE IV, the exact amount to be determined by the jury at the time of trial;

8.      Economic damages by Defendant BSA for Plaintiff JOHN DOE IV, the exact amount to be determined by the jury at the time of trial;

9.      For Plaintiffs' disbursements and incurred costs; and

10.     Attorney fees; and

11.     For any other relief this Court deems just and equitable.


DATED this 24th day of June, 2013.

CHASAN AND WALTON, LLC


/ s /
Andrew M. Chasan, ISB #2100
Timothy C. Walton, ISB #2170

*Of Attorneys for Plaintiffs*


O'DONNELL CLARK & CREW LLP


/ s /
Gilion C. Dumas, ISB #8176

*Of Attorneys for Plaintiff*

O'DONNELL CLARK & CREW LLP
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, Oregon  97209
Phone 503-306-0224  Fax 503-306-0257