UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOE I, JOHN DOE II, JOHN DOE III, JOHN DOE IV, JOHN DOE V, JOHN DOE VI, JOHN DOE VII, AND JOHN ELLIOTT,<br><br>                Plaintiff,<br>  v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTERDAY SAINTS AND SUCCESSORS, a foreign corporation registered to business in Idaho,<br><br>                Defendants. | Case No. 1:13-cv-00275-BLW<br><br>**MEMORANDUM DECISION & ORDER** |

## INTRODUCTION

The eight plaintiffs in this case joined Boy Scout troops when they were children. Some of the troops were sponsored by the LDS Church. Each plaintiff says a scout leader sexually abused him and, further, that the LDS Church and the Boy Scouts were well aware of the dangers of sex abuse in scouting but failed to disclose that danger.

**MEMORANDUM DECISION & ORDER - 1**

All plaintiffs have sued the Boy Scouts of America and five of the eight are suing the LDS Church as well.  The original eight plaintiffs also wish to amend their complaint to add eight new plaintiffs, for a total of sixteen.[1]  *See Motion to Amend*, Dkt. 23; *Second Motion to Amend,* Dkt. 30.

The issue before the Court is whether these sixteen individuals should be allowed to pursue their claims in a single action, or whether they should be required to proceed separately.  As explained below, the Court concludes that four of the sixteen plaintiffs (John Does VII, IX, XI and John Elliott) will be allowed to pursue their cases to trial in a single action because their claims arise out of the same event.  With regard to the remaining twelve, the Court will allow their claims to be joined during the pre-trial phase of this case, because their claims arise out of a common series of occurrences and present common legal and factual issues.  The Court will sever these twelve plaintiffs' claims for trial, however, because a single trial would result in prejudice and jury confusion.

The parties should be aware, however, that after discovery, and most likely after ruling on dispositive motions, the Court may reconsider, either on motion or pursuant to its inherent powers, the propriety of a single trial for some or all of these twelve plaintiffs.[2]  *See* Fed. R. Civ. P. 20(b), 21, and 42(b).

---

[1] Plaintiffs seek to add these eight new plaintiffs in two separate motions to amend.  The first motion to amend, Dkt. 23, seeking to add four new plaintiffs, is ripe.  The second motion to amend, Dkt. 30, seeking to add another four plaintiffs, is not yet ripe but presents the same issues as the first motion to amend.  The Court will therefore rule on both motions now.

[2] The Court is not inviting a motion to reconsider its ruling now.  Rather, the Court is concerned that discovery may disclose that the evidence in one trial will largely overlap the evidence presented in another, so that joinder for trial is appropriate because considerations of judicial economy could outweigh any potential prejudice to the Defendants or possible confusion of the jury.

**MEMORANDUM DECISION & ORDER - 2**

# BACKGROUND

The sixteen plaintiffs in this case can be broadly grouped into two categories: (1) the four individuals who allege that a scout leader sexually abused them on the same night, in the same tent, and (2) all the others.

**1.      John Does VII, IX, XI, and John Elliott**

The four boys who were allegedly abused on the same night – John Does VII, IX, XI, and John Elliott – appear to have joined[3] the same troop, sponsored by the Southminster Presbyterian Church.  They say that during the summer of 1977, they went on an overnight hiking trip near McCall, Idaho.  Scout leader James Schmidt told them scary stories and convinced the boys to sleep in his tent.  He then abused each of them in turn.  The boys were 12 or 13 years old.  These plaintiffs bring their claims against the Boy Scouts of America only.

**2.      The Remaining Plaintiffs**

The remaining plaintiffs were allegedly abused at different times by different men, though there is overlap  in the names of the accused abusers:  Six men – James Schmidt, Dennis Empey, Larren Arnold, Lawrence Libey, Ronald Jenkins, and Art Krigbaum – allegedly abused the twelve boys.  All boys appear to have joined different scouting troops.  Some are suing both defendants, while others sue only the Boy Scouts.

As for the particular troops involved in this suit, there is no overlap between the specific troops identified thus far, although seven boys allegedly joined troops sponsored

---

[3]To be clear, the plaintiffs in this case often do not allege that they "joined" any given troop; rather they typically say they were "involved in" or "participated in" a troop.  The Court uses the term "joined" in this decision as a shorthand reference to the boys' involvement in scouting.

by some branch of the LDS Church. Otherwise, one boy joined a troop sponsored by the Elks Club; another joined a troop sponsored by the Presbyterian Church; another joined a troop sponsored by the Christian Faith Center of the Assembly of God, and another joined a troop sponsored by the Whitney United Methodist Church.

As for the alleged abuse, plaintiffs allege the following incidents:

*John Doe I.* John Doe I says James Schmidt abused him over a six-month period during the spring and summer of 1982, including in LDS Church buildings and Boy Scout buildings in Boise, as well as on boy scout camping trips.

*John Doe II.* John Doe II says James Schmidt abused him over a two-year period, between 1982 and 1984.

*John Doe III.* John Doe III says Dennis Empey abused him approximately four times in 1981 during a week-long camping trip at Camp Morrison, a boy scout camp located near McCall, Idaho.

*John Doe IV.* John Doe IV says Lawrence Libey abused him hundreds of times over a six-year period, from 1972 to 1978. He has not specified where the abuse occurred.

*John Doe V.* John Doe V says James Schmidt abused him in a single incident in 1979 or 1980 at Schmidt's home.

*John Doe VI.* John Doe VI says Larren Arnold abused him on two separate occasions in 1980 – once during the summer at Camp Morrison and then later in 1980, at a different event in Boise, Idaho. John Doe VI also says Dennis Empey abused him

**MEMORANDUM DECISION & ORDER - 4**

during the summer of 1982, at Camp Tapawingo, another boy scout camp near McCall, Idaho.

*John Doe VIII.*  John Doe VIII says Larren Arnold abused him at Camp Morrison in 1976 or 1977.

*John Doe X.*  John Doe X says James Schmidt abused him during the summer of 1977 during a three-day backpacking trip that was part of a summer camp at Camp Morrison.

*John Doe XII.*  John Doe XII says Larren Arnold abused him over a six-month period in 1973 in group settings, during scouting events.

*John Doe XIII.*  John Doe XIII says his foster father and scout leader, Ronald Jenkins, abused him in or around the summer of 1976 or 1977, before and after scout meetings and during overnight scouting events, such as camping trips.

*John Doe XIV.*  John Doe XIV says Art Krigbaum abused him in the early 1970s through 1974, before and after troop meetings and during overnight scouting events, such as camping trips.

*John Doe XV.*  John Doe XV says James Schmidt abused him during the summer of 1976 or 1977 on an overnight hiking trip near Camp Morrison.

## LEGAL STANDARD

To join together in one action, plaintiffs must meet two specific requirements: (1) the right to relief asserted by each plaintiff must arise out of or relate to the same transaction or occurrence, or series of transactions or occurrences; and (2) a question of law or fact common to all parties must arise in the action.  Fed. R. Civ. P. 20(a); *League*

**MEMORANDUM DECISION & ORDER - 5**

*to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Generally, this joinder rule is to be construed liberally in order to promote trial convenience and to prevent multiple disputes. *Tahoe Reg'l Planning Agency*, 558 F.2d at 917. Still, though, the decision to sever a claim under Rule 21 is in the Court's broad discretion. "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir.1997); *see also* Fed. R. Civ. P. 21 (allowing court to sever a claim against any party). Further, even if parties and claims have been properly joined, a court may, in its discretion, sever claims to "comport with principles of fundamental fairness" or avoid prejudice to the parties or jury confusion. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980) (finding that the district court did not abuse its discretion when it severed certain plaintiff's claims without finding improper joinder)).

## ANALYSIS

Plaintiffs contend their claims are properly joined because (1) they were boy scouts and read similar scouting publications encouraging them to trust their scout leader, (2) the defendants knew or should have known that certain scout leaders, including the perpetrators identified in this case, had a propensity to sexually abuse young boys, and (3) the plaintiffs were later sexually abused by a scout leader, often on overnight camping trips in Idaho. These similarities justify joinder for discovery and pretrial purposes, but the potential for prejudice to the defendants and the likelihood of confusing the jury is

**MEMORANDUM DECISION & ORDER - 6**

substantial, so that considerations of fundamental fairness dictate that separate trials be held for twelve of the sixteen plaintiffs. However, because there will be a substantial overlap in the evidence in their trials, the four plaintiffs who apparently joined the same scout troop and were later abused by the same person on the same night will be allowed to try their claims in a single trial.

1.   **Permissive Joinder**

   A. **The Same-Transaction Requirement**

As for the first joinder requirement discussed above – that plaintiffs' claims arise from the same transaction or occurrence (or series of transactions or occurrences) – there is no bright-line definition of "transaction," "occurrence," or "series." The Ninth Circuit has generally explained that this requirement "'refers to similarity in the factual background of a claim.'" *Coughlin*, 130 F.3d at 1350 (quoting the *Coughlin* district court opinion). The court has also suggested that claims arising from "a systematic pattern of events" could satisfy the same-transaction-or-occurrence requirement. *Id.* (quoting the district court opinion).

In *Mosley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974), one of the leading opinions on joinder, the Eighth Circuit elaborated on the meaning of a "transaction or occurrence" as follows:

> In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. No hard and fast rules have been established under the rule. However, construction of the terms 'transaction or occurrence' as used in the context of Rule 13(a) counterclaims offers some guide to the application of this test. For the purposes of the latter rule, "'Transaction' is a word of flexible meaning.

> It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Cotton Exchange*, 270 U.S. 593, 610 (1926). Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.

*Id.* at 1333 (many internal citations and paragraph divisions omitted here). As discussed below, this test squares with Ninth Circuit authority on joinder.

Applying the test to this case, the four plaintiffs[4] who joined the same scout troop and were later abused on the same night, in the same tent by the same person, satisfy the same-transaction-or-occurrence requirement.

The remaining twelve plaintiffs are situated differently, in that they do not allege abuse on the same night by the same person. Still, though, their claims are logically related and can fairly be viewed as consisting of a common series of occurrences, particularly when the joinder rules are liberally construed. *See generally United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

The logical connection between their claims is based, in part, on the fact that each plaintiff alleges the LDS Church and the Boys Scouts knew sex abuse occurred in scouting and that both entities chose not to disclose this danger to scouts or their parents. While defendants may be able to rebut these allegations at a later date, at this procedural

---

[4] Two of these four individuals – John Doe VII and John Elliott – are named in the complaint. Two others – John Does IX and XI – are the subject of a motion to amend. *See* Dkt. 23.

**MEMORANDUM DECISION & ORDER - 8**

juncture, plaintiffs have sufficiently alleged that their incidences of abuse are logically related.

Further, although each of these twelve plaintiffs suffered sex abuse at different times in different places, it is not difficult to pick out additional, logical relationships between their experiences. As already noted, all were abused by scout leaders – many by James Schmidt and many on overnight camping trips – and all had joined scout troops and read the scouting handbook telling them, in essence, to trust scout leaders.

The defendants seem to be suggesting that in *Coughlin v. Rogers,* 130 F.3d 1348 (9th Cir. 1997), the Ninth Circuit adopted a more restrictive view of joinder than did the Eighth Circuit in *Mosley*. The Court disagrees.

In *Coughlin*, 49 plaintiffs alleged that the Immigration and Naturalization Service had delayed their applications or petitions. The district court held that plaintiffs could not properly join their claims simply by relying on the "basic connection" of "procedural delay." 130 F.3d at 1350 (quoting *Coughlin v. Rogers,* No. CV 96-1025-ABC (C.D. Cal. 1996)). The court explained that "the mere allegation of general delay" was "not enough to create a common transaction or occurrence." *Id.* at 1351. Further, each plaintiff has waited a different length of time, had suffered a different duration of delay and there may have been numerous reasons for the alleged delay. *Id.* The court also specifically observed that the *Coughlin* plaintiffs did not allege that their claims arose out of "a systematic pattern of events."

*Coughlin* can thus be squared with *Mosley,* which upheld joinder of 10 plaintiffs' racial discrimination claims because each plaintiff was allegedly injured by a company-

**MEMORANDUM DECISION & ORDER - 9**

wide policy designed to discriminate against African-Americans.  *Mosley,* 497 F.2d at 1333-34.  *Accord Waterfall Homeowners' Ass'n v. Viega, Inc.*, 279 F.R.D. 586, 589-90 (D. Nev. 2012).

### B. Common Questions of Law or Fact

Turning to the second joinder requirement – that the claims present a common question of law or fact – defendants concede that there are some commonalities among plaintiffs' claims.  *See Reply*, Dkt. 24, at 4.  After all, each plaintiff alleges constructive fraud based on defendants' failure to warn about the dangers in scouting.  The question of the defendants' knowledge is a question of both fact and law common to each plaintiff's claim.

Defendants nevertheless argue that because the case involves sixteen different instances of sex abuse, with each plaintiff being required to individually prove the elements of his claim, that joinder is not proper.  But there is no requirement that all questions of law and fact be identical for there to be permissive joinder under Rule 20(a).  Rather, the rule provides for joiner as long as there is *any* question of law or fact.  That requirement is satisfied.

### 2. Fundamental Fairness & Prejudice

Having determined that plaintiffs satisfy the two-part test for joinder, as laid out in Rule 20, the Court must still examine whether permissive joinder would "comport with the principles of fundamental fairness" or would result in prejudice to either side. *Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir. 2000).

A.  **John Does VII, IX, XI, and John Elliott**

Regarding John Does VII, IX, XI, and John Elliott, the Court finds benefits of allowing joinder outweigh any potential prejudice to the defendants, both during the pretrial proceedings and at trial.  The Court will therefore allow a single trial for these plaintiffs.

B.  **The Remaining Plaintiffs**

As for the remaining twelve plaintiffs, the Court concludes that a single trial would be highly prejudicial to the defendants.  In particular, the LDS Church would be prejudiced if plaintiffs were allowed to try numerous cases that do not involve the LDS Church in any way with cases that do.  Of the sixteen plaintiffs, eight allege claims against the Boy Scouts only, while the others allege claims against both the Boy Scouts and the LDS Church. Further, even where the plaintiffs are suing the same defendants, allowing twelve plaintiffs to proceed in a single action, based on different (albeit common) experiences, would likely confuse a jury and thereby prejudice the defendant. *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (severance likely necessary "to keep straight the facts pertaining to the separate automobiles").  This potential for prejudice outweighs any potential gains in efficiency by having a single action.

The Court cannot, however, find any significant prejudice to the defendants if these plaintiffs' claims remain joined during pretrial proceedings.  *See generally Maverick Entm't v. Doe,* 810 F. Supp. 2d 1 (D.D.C. 2011) ("The Court may exercise discretion regarding the proper time to sever parties, and this determination includes consideration of judicial economy and efficiency.").  To the contrary, at this early stage

**MEMORANDUM DECISION & ORDER - 11**

of the litigation, considerations of convenience, economy, and expedience persuade the Court that joinder is appropriate for all plaintiffs.  Among other things, joinder of the will permit more economical discovery of common facts and will likely lead to coordinated briefing on common issues.

In sum, then, when Rule 20 is viewed in light of the overarching policy of Rule 1 – which requires that the rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding" – the Court finds that joinder during the pretrial phase of this litigation will outweigh any minimal prejudice defendants may suffer.

**3.    Motions to Amend**

Defendants opposed plaintiffs' motion to amend their complaint for basically the same reasons they asked the Court to grant their motion to sever.  *See Response,* Dkt. 26, at 2.  That is, they argued that the sixteen plaintiffs' claims did not arise out of the same transaction or occurrence, did not have common facts, and joinder would be prejudicial. Having concluded that all sixteen individual claims may be properly joined for pretrial purposes, the Court will grant plaintiffs' motions to amend.

## ORDER

The Court orders that:

1. Defendants' Motions to Amend (Dkt. 23 and 30) are **GRANTED.**
2. Defendants' Motion to Sever (Dkt. 10) is **GRANTED in part** and **DENIED in part** as follows:

    a. The motion is granted to the extent that twelve of the named plaintiffs (all but John Does VII, IX, XI, and John Elliott) will have their cases severed for trial.

    b. The motion is denied to the extent defendants seek to sever the claims of John Does VII, IX, XI, and John Elliott for trial.

    c. The motion is denied to the extent it seeks to sever all sixteen plaintiffs' claims for discovery and pretrial purposes.

3. The Boy Scouts of America's request motion to join the LDS Defendants' motion to sever (Dkt. 16) is **GRANTED.**

**IT IS FURTHER ORDERED THAT**:

1. The parties are ordered to appear at a telephonic status conference on February 5, 2014 at 4:00 p.m. *See* Dkt. 36.

2. The parties shall meet and confer to devise a litigation plan, including a detailed discovery plan. Proposed litigation plans shall be filed with the Court by no later than February 4, 2014. If the parties wish to rely on the litigation plans filed earlier, *see* Dkts. 32-34, they shall so advise the Court before the February 5, 2014 telephonic status conference.

DATED: January 30, 2014

B. Lynn Winmill
Chief Judge
United States District Court