UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOE I, JOHN DOE II, JOHN DOE III, JOHN DOE IV, JOHN DOE V, JOHN DOE VI, JOHN DOE VII, AND JOHN ELLIOTT,<br><br>     Plaintiff,<br> v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to business in Idaho,<br><br>     Defendants. | Case No. 1:13-cv-00275-BLW<br><br>**ORDER CERTIFYING QUESTIONS TO THE IDAHO SUPREME COURT** |

## INTRODUCTION & CERTIFICATION OF ISSUES

Pending before the Court is defendants' Motion to Certify Controlling Questions of Law to the Idaho Supreme Court. See Dkts. 38, 43. Defendants also ask the Court to

stay all proceedings in this matter until certification proceedings are concluded. *See* Dkts. 39, 44. This Court will grant the certification motion in part, by certifying the following questions:

> 1. *What statute of limitations applies to a constructive-fraud claim where plaintiff alleges that a breach of duty resulted in sex abuse?*
>
> 2. *When does a claim for constructive fraud related to childhood sex abuse accrue?*

In accordance with Idaho Appellate Rule 12.3(a), the Court certifies that: (1) these questions are controlling questions of law in this action; (2) there are no controlling precedents in the decisions of the Idaho Supreme Court; and (3) an immediate determination of Idaho law with respect to these questions will materially advance the orderly resolution of this action.

The United States Supreme Court has noted that certification saves "time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974). And, the Ninth Circuit has acknowledged that certification is appropriate where there is a "stark absence of case law on [an issue], . . . reasonable policy arguments on both sides, and . . . possibly far-reaching ramifications of whatever rule of law is adopted." *L.A. Memorial Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1362 (9th Cir. 1986). These overarching concerns compel the Court to certify the questions identified above. The Court will stay all further proceedings in this matter until certification proceedings are concluded.

# BACKGROUND

The sixteen plaintiffs in this case joined Boy Scout troops when they were children. Some of the troops were sponsored by the LDS Church. The plaintiffs allege that they were sexually abused by their scout leaders and, further, that the LDS Church and the Boy Scouts organization were well aware of the dangers of sex abuse in scouting but failed to disclose that danger. Plaintiffs further allege that not only did defendants remain silent about the dangers of pedophilic scoutmasters, but they also affirmatively represented to the boys that each scout leader was a "great guy," a "wonderful man," or a "friend to whom you can always turn for advice." *See Second Am. Compl.*, Dkt. 47, ¶ 119 (quoting various editions of the *Boy Scout Handbook*). All plaintiffs have sued the Boy Scouts organization and eight of the sixteen are suing the LDS Church as well.

# ANALYSIS

All plaintiffs allege claims for constructive fraud. Defendants contend that the Idaho Supreme Court should answer the following four questions, as paraphrased by this Court:

(1) What statute of limitations applies to a constructive-fraud claim where plaintiff alleges that a breach of duty resulted in sex abuse?

(2) When does a claim for constructive fraud related to childhood sex abuse accrue?

(3) Can a non-commercial relationship between a church and a minor parishioner support a claim for constructive fraud?

(4) Are plaintiffs pursuing constructive-fraud claims restricted to pecuniary damages?

*See Mot. Mem.*, Dkt. 38-1.

For the reasons explained below, the Court will certify the first two questions but will decline to certify the third and fourth.

**1.     Statute of Limitations**

A threshold question in this litigation is whether plaintiffs' claims are barred by the statute of limitations. The parties do not agree on which statute of limitations applies, though defendants have identified three candidates:

> (1) the three-year statute applicable to fraud claims, s*ee* Idaho Code § 5-218(4);
>
> (2) the four-year statute applicable to claims for breach of fiduciary duty, *see* Idaho Code § 5-224;[1] and
>
> (3) the two-year statute applicable to personal-injury claims, *see* Idaho Code § 5-219(4).

To select the governing statute of limitations, "[t]he first analytical step is to classify [the] cause of action . . . ." *Nerco Minerals Co. v. Morrrison Knudsen Corp.*, 90 P.3d 894, 898 (Idaho 2004). To classify the action, courts look to the "'substance, not the form, of the action.'" *Id.* (*quoting Trimming v. Howard*, 16 P.2d 661, 662 (Idaho 1932)).

Defendants contend that constructive fraud is more akin to breach of fiduciary duty or breach of warranty than it is to actual fraud and thus cannot be properly classified as "fraud." *See Mot. Mem.*, Dkt. 38-1, at 11-12 (citing *Country Cove Dev. v. May*, 150 P.3d 288, 294 (Idaho 2006) and *Bethlahmy v. Bechtel,* 415 P.2d 698, 707 (Idaho 1966)). Defendants also say that because plaintiffs are alleging physical injuries, the "substance"

---

[1] This catch-all, four-year statute applies to claims for breach of fiduciary duty. *See, e.g., Jones v. Runft, Leroy, Coffin & Matthews, Chtd.,* 873 P.2d 861*,* 868 (Idaho 1994).

of the action is necessarily a personal-injury action, meaning that the two-year personal-injury statute of limitations would apply.

Plaintiffs, on the other hand, repeatedly say that because "constructive fraud *is* fraud," the three-year statute of limitations for fraud applies. *See Resp.*, Dkt. 56, at 11, 12, 17. And, to be sure, to succeed on their claims, the plaintiffs would need to prove the nine elements of fraud,[2] though two of those elements – knowledge of falsity and intent to induce reliance – are presumed by virtue of the confidential relationship between the plaintiff and the defendant. *See Gray*, 210 P.3d at 71. Thus, according to plaintiffs' logic, the "substance" of their claims should be determined by focusing on the nature of the claim they are asserting – not by focusing on the physical harm they ultimately suffered.

In an earlier, substantially identical case, this Court concluded that the three-year statute of limitations for fraud applied. *See Tom Doe v. Presiding Bishop of the Church of Jesus Christ of Latter-day Saints*, 837 F. Supp. 2d 1145, 1152-53 (D. Idaho 2011). The Court explained that while an argument could be made for application of either the fraud or the personal-injury limitations period,[3] the substance of plaintiff's claim was fraud – not personal injury. *Id*. As the Court pointed out, it had been "unable to find any decision of the Idaho appellate courts suggesting that the applicable statute of limitations

---

[2] The nine elements of fraud are: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Gray v. Tri-Way Constr. Servs., Inc.*, 210 P.3d 63, 71 (Idaho 2009).

[3] At that time, neither party suggested that the statute of limitations applicable to breach of fiduciary duty might apply.

**MEMORANDUM DECISION & ORDER - 5**

should be determined by reference to the damages sought rather than the nature of the claim asserted." *Id.* at 1153.

Further, this Court does not believe that focusing solely on one of the harms alleged – physical injury – captures the substance of plaintiffs' claims. True, plaintiffs are suing, in part, because they were sexually abused when they were children, and sexual abuse is a personal injury. But plaintiffs are not complaining that the Boy Scouts and the LDS Church sexually abused them; they are complaining that these institutions deceived them by telling them to trust their Scoutmasters and, at the same time, *not* telling them about the dangers of pedophilic Scoutmasters. So in that sense, plaintiffs are not pursuing personal-injury claims; they are pursuing fraud claims. *See generally John Doe 1 v. Archdiocese of Milwaukee*, 734 N.W.2d 827, 843 (Wis. 2007) (applying fraud statute of limitations to plaintiffs' fraud claims against a church; observing that "the fraud claims are not derivative claims, but rather, intentional torts where the wrongful act is the Archdiocese's fraudulent representation that it did not know of the priests' histories of sexually molesting children and that it did not know the priests were dangerous to children.").

As the Court explained in its earlier *Doe* decision, *Umphrey v. Sprinkel*, 682 P.2d 1247 (1983) bolsters this conclusion. 837 F. Supp. 2d at 1152. In *Umphrey*, the plaintiffs successfully asserted a claim of fraud against real estate agents based upon representations made concerning road access and water supply for a parcel of land. The defendants contended that the claims were in the nature of professional malpractice and were therefore barred by the two-year statute of limitations under Idaho Code § 5-219(4).
**MEMORANDUM DECISION & ORDER - 6**

The Idaho Supreme Court rejected that argument, holding that "an action for fraudulent misrepresentation does not fall within the protective embrace of the professional malpractice statute." *Umphrey*, 682 P.2d at 1253. In reaching this conclusion, the Idaho Supreme Court reasoned:

> [t]he gist of a malpractice action is negligence . . . . An action for fraud or deceit involves more than mere negligence. While it is a tort action, it is more in the nature of an intentional tort, requiring that the speaker have knowledge of the representation's falsity or ignorance of its truth, as well as intent that the representation be relied upon. In addition, the plaintiff must prove all elements by clear and convincing evidence as opposed to the less stringent preponderance of the evidence standard used in ordinary negligence cases. Hence, we believe that an action for fraud and deceit is not within the purview of a malpractice action.

*Id*. at 1253 (citations omitted).

The *Umphrey* Court went on to justify its holding by suggesting that the Idaho legislature made a policy choice to provide greater leeway for a potential plaintiff who alleges fraud, because of the inherent difficulties in pursuing such a claim. It noted that this policy decision "is founded upon the realization that fraud, an intentional and often orchestrated scheme, is ordinarily more difficult to discover than a negligent injury." *Id*. at 1254-55. Thus, as this Court pointed out earlier, *Umphrey* teaches that the specific fraud statute of limitations, with its provision for accrual upon discovery, should apply where the plaintiff alleges fraud and assumes the heavy burden of proving an intentional tort by clear and convincing evidence. *Doe*, 837 F. Supp. 2d at 1153.

Although it is not bound by its earlier decision, the Court would reach the same conclusion again, for all the reasons just explained. Additionally, the Idaho legislature has instructed courts that its statutes are to be "liberally construed, with a view to effect

**MEMORANDUM DECISION & ORDER - 7**

their objects and to promote justice." Idaho Code § 73-102(1). *See also Peterson v. Gentillon*, 296 P.3d 390, 395 (Idaho 2013).

The Court also notes that in *Nancy Lee Mines, Inc. v. Harrison*, 511 P.2d 828, 829 (Idaho 1973), the Idaho Supreme Court hinted that it would apply the fraud statute of limitations to a constructive-fraud claim. In that case, a mining company sued the estate of Lester Harrison, the company's former manager and attorney. Intervenors in the suit alleged that Harrison had committed fraud in connection with stock assessment sales. It is unclear whether the intervenors alleged actual fraud or constructive fraud or both; the background description just says they alleged "fraud and illegal procedures" surrounding the stock sales. *Id*. at 828. In analyzing the issues, the court said that "the action" would be barred by the statute of limitations "[u]nless there was undiscovered fraud . . . ." *Id.* at 829. And in talking about undiscovered fraud, the court assumed it could either be actual or constructive fraud:

> [T]he statute [of limitations] does not begin to run in fraud cases 'until the discovery' of the fraud. [*See* Idaho Code § 5-218(4)]. However, actual knowledge of the fraud will be inferred if the allegedly aggrieved party could have discovered it by the exercise of due diligence. It is unnecessary to consider the issue of whether or not there was any fraud (*actual or constructive*) in this case. If there was *any fraud* it could have been discovered in the exercise of reasonable diligence at the time it was alleged to have been committed.

*Id.* (footnote citations omitted; emphasis added).

So, in other words, *Nancy Lee* seems to say that the statute of limitations for fraud – along with its discovery rule – would apply to constructive-fraud claims. *See also Witt v. Jones*, 722 P.2d 474, 481-82 (Idaho 1986) (Bistline, J., dissenting) (in dissent,

Justice Bistline assumes that the statute of limitations for fraud, along with its discovery rule, would apply to a constructive-fraud claim; the majority did not address the issue). But the case did not squarely address the issue.

In sum, despite all the authorities discussed above, the statute-of-limitations question for a constructive-fraud claim is up in the air in Idaho. Other states do not agree on whether fraud statutes of limitation govern both actual and constructive fraud claims.[4] Additionally, while many courts repeat the rule that "the substance, not the form" governs when determining which statute of limitations applies, courts disagree as to what "substance" means in this context. Some say you look to the ultimate harm suffered, or damages claimed, to figure out the "substance" of the claim,[5] while others say you do not.[6] At least one commentator has highlighted the difficulty of defining the "substance"

---

[4] *Compare*, *e.g.*, *Wells v. Stone City Bank,* 691 N.E. 2d 1246, 1250 (Ind. Ct. App. 1998) ("The six-year statute of limitations for actions seeking relief against frauds applies to constructive, as well as actual, frauds.") *and Excalibur Ins. Co. v. Speller,* 257 S.E. 2d 848, 850 (Va. 1979) (The applicable statute of limitations "makes no distinction between actual fraud and constructive fraud, and we construe the statute to contemplate both.") *with Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. 1997) (declining to apply the fraud state of limitations – which is similar to Idaho's – to a claim for constructive fraud or breach of fiduciary duty because the state's fraud statute of limitations "uses the word 'fraud' but not 'breach of fiduciary duty' or 'constructive fraud'")

[5] *See Doe A. v. Diocese of Dallas*, 917 N.E.2d 475, 487 (Ill. 2009) ("The law is well established that the limitations period governing a claim is determined by the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises."); *Meisenhelder v. Zipp Express, Inc.*, 788 N.E. 2d 924, 932 (Ind. Ct. App. 2003) ("For purposes of the statute of limitations, the substance of a cause of action is ascertained by an inquiry into the nature of the alleged harm and not by reference to the theories of recovery advanced in the complaint."); *Town of Webster v. Village of Webster*, 720 N.Y.S.2d 664, 667 (N.Y. App. Div. 2001) ("'The appropriate Statute of Limitations is determined by the substance of the action and the relief sought.'") (citation omitted).

[6] *See, e.g., Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1133 (6th Cir. 1995) (concluding that the Michigan Supreme Court would examine the "nature and origin" of a claim to determine the applicable limitations period, and would look, not at the type of damages, but rather at the source of damages); *Hydro–Mill Co. v. Hayward, Tilton & Rolapp Ins. Assoc., Inc.*, 10 Cal. Rptr. 3d 582, 589 (Ct. App. 2004) (indicating that the nature of the right sued upon determines which statute of limitations applies, not the form of the action or the relief demanded); *Rivas v. Safety-Kleen Corp.*, 119 Cal. Rptr. 2d

of any given claim: "To say that the substance or nature of the claim determines the applicable limitations period, however, is merely to beg the question: the nature of what aspect of the claim?" Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1030 (Winter 1997).

Given this uncertainty, along with the potentially far-reaching implications of accurately characterizing the "substance" of plaintiffs' claims and then selecting the governing statute of limitations, the Court will certify this question to the Idaho Supreme Court: *What statute of limitations applies to a constructive-fraud claim where plaintiff alleges that a breach of duty resulted in sex abuse?* The Court's phrasing of the question is not intended to restrict the Idaho Supreme Court's consideration of the issue.

## 2. Accrual

The Court will also certify the following, related question: *When does a claim for constructive fraud related to childhood sex abuse accrue?* The Church's briefing raises two sub-questions: (1) Does the discovery rule apply to constructive-fraud claims? and (2) Assuming the discovery rule does apply, did plaintiffs necessarily "discover" their constructive-fraud claim against the Church and the Boy Scouts the moment they were sexually abused? *See generally Mot. Mem.*, Dkt. 38-1, at 16-18. As will be explained, this Court believes the only certifiable sub-issue is the first one – namely, whether the discovery rule applies to constructive-fraud claims.

---

503, 512 (Ct. App. 2002) (in determining which statute of limitations applies, "'the true nature of the action will be ascertained from the basic facts . . . .'") (citation omitted); *Ass'n of Owners v. Otte*, 550 P.2d 894, 896 (Colo. Ct. App. 1976) ("It is the nature of the right sued upon and not the form of action or the relief demanded, which determines the applicability of a particular statute of limitations.").

The Idaho appellate courts have not ruled on whether the discovery rule applies to a constructive-fraud claim. To answer this question, the logical first step would be to determine which statute of limitations applies. If, for example, the Idaho Supreme Court were to hold that the fraud statute of limitations applies, then the statute itself would appear to directly answer the question. It expressly states that fraud claims do not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud . . . ." Idaho Code § 5-218(4); *see also Nancy Lee Mines*, 511 P.2d at 829 (assuming fraud action would not accrue until failure to discover constructive or actual fraud). But if the Idaho Supreme Court determines that a different limitations statute governs, then a discovery rule arguably might not apply.

Courts across the country have not uniformly decided whether the discovery rule should apply to constructive-fraud claims. Some hold that the discovery rule applies only in cases of "actual fraud," while others hold that the rule applies to both constructive and actual fraud. *See generally* 54 C.J.S. *Limitation of Actions* § 269 (citing cases). Given that the Idaho Supreme Court has not spoken directly on this issue, the Court will certify it.

As for the second sub-issue identified by the Church (the date plaintiffs discovered their claims), the Court declines to certify this question because Idaho law provides sufficient guidance. That is, if the Idaho Supreme Court decides that the discovery rule does apply to constructive-fraud claims, then this Court had adequate guidance from existing Idaho authority. Idaho courts have "consistently held that where discovery of a cause of action commences the statute of limitations the date of discovery is a fact

**MEMORANDUM DECISION & ORDER - 11**

question for the jury unless there is no evidence creating a question of fact." *McCoy v. Lyons*, 820 P.2d 360, 368 (Idaho 1991). So in determining the date of discovery, the Court is not tasked with deciding a controlling question of law that is unresolved in Idaho. Rather, the Court would simply apply established Idaho law to this case, a task this Court routinely performs.

In sum, in certifying the accrual question, the Court is primarily seeking guidance as to whether the discovery rule applies. Once that question is answered, the Court believes existing Idaho authority provides sufficient guidance.

3.  **Existence of a Confidential or Fiduciary Relationship**

The Court declines to certify this question: *Under Idaho law, can a noncommercial relationship between a church and its parishioners support a claim for constructive fraud based on breach of a fiduciary duty?*

The Church points out that the Idaho Supreme Court has never directly ruled on this specific question. But determining whether a confidential or fiduciary relationship exists in this case will depend on the facts – not the legal status of the parties. As the Idaho Supreme Court has explained, "[a] fiduciary relationship does not depend upon some technical relation *created by or defined in law*, but it exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of one reposing the confidence." *Jones v. Runft, Leroy, Coffin & Matthews, Chartered*, 873 P.2d 861, 868 (Idaho 1994) (emphasis added). The vulnerability that is a necessary predicate of a confidential relationship may arise "by reason of kinship, business association, disparity

in age, etc., . . . .." which results in one person reposing a high degree of trust or confidence in another. *Klein v. Shaw*, 706 P.2d 1348, 1351 (Idaho 1985).

Despite Idaho's expansive general definitions of the circumstances under which a confidential or fiduciary relationship can arise, the Church is effectively arguing that the Idaho Supreme Court would categorically prohibit a church from entering into a fiduciary or confidential relationship with a minor parishioner – based solely on the fact that one party is a church and the other is a church member. That argument is contrary to Idaho authority, which explains that "[e]quity has never bound itself to any hard and fast definition of the term 'confidential relationship' . . . but has reserved discretion to apply the doctrine whenever it believes a suitable occasion has arisen." *Id.* So whether the church entered into a confidential or fiduciary relationship with any given plaintiff will depend on the facts.

Despite the need for further factual development – regarding the facts of each plaintiff's individual relationship with the defendants – before deciding this question, defendants insist that the question can and should be decided now. Defendants base this argument on general statements from Idaho courts, indicating that whether a fiduciary relationship exists is a question of law. *See, e.g., Beaudoin v. Davidson Trust Co.*, 263 P.3d 755, 759 (Idaho 2011) ("Whether a fiduciary relationship exists is a question of law."); *see also Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73, 86 (Idaho 2005) ("Whether a fiduciary relationship exists is a question of law . . . .").

The Court reads Idaho authority differently. Granted, the law will often presume a fiduciary duty based on the status of each party – as in the case, for example, of an

attorney and a client. In those cases, the existence of a fiduciary duty will indeed be a legal question. But outside these formal, fiduciary relationships, the existence of a confidential or fiduciary relationship will depend on an analysis of the underlying facts. And, again, the facts have not been developed in this case. We are still at the pleading stage.

If plaintiffs were arguing that the law presumed a fiduciary or confidential relationship between a church and its members simply by virtue of the fact of the church/member relationship, then there would be a legal issue to decide now. But the plaintiffs are not making any such argument. So the Court is not being called upon to make a landmark ruling on this point (or, more accurately, to predict that the Idaho Supreme Court would make such a ruling).

Finally, the Court is unpersuaded by the Church's argument that the Idaho Supreme Court's recent decision in *Beers v. Corporation of the President of the Church of Jesus Christ of Latter-day Saints*, 316 P.3d 92 (Idaho 2013) strengthens its request for certification. The Church says *Beers* "strongly suggests" the Idaho Supreme Court "would not recognize a fiduciary relationship between a church and its members." *Mot. Mem.*, Dkt. 38-1, at 7. In *Beers*, a thirteen-year-old church member was injured while jumping from a bridge into a river during a campout organized by her congregation. Her parents did not attend the campout. She was brought by other members of the congregation, but no one had been specifically tasked with supervising her. The Idaho Supreme Court held that the church did not have sufficient control over the girl to create a special relationship, which would have triggered a legal duty. 316 P.3d at 98.

*Beers* does not compel this Court to seek certification for two reasons. First, a reading of the *Beers* decision shows that the court carefully analyzed the underlying facts to determine whether a duty arose. Significantly, the facts in that case were far more developed than here. This case is still at the pleading stage. In *Beers,* the trial court had ruled on a motion for summary judgment.

The second reason *Beers* does not compel certification is that it is factually distinguishable. Heidi Beers was injured while jumping off a bridge, and "bridge jumping was not an official Ward activity, it occurred a mile away from the location of the campout, and it took place after the conclusion of the last Ward-planned activity." *Id.* at 99. Additionally, the *Beers* campout was a loosely organized affair, and it appears to have been a family outing, with parents or other guardians present for most of the children.

Here, by contrast, plaintiffs allege that the Church voluntarily assumed a duty of care and supervision over them, and it appears that the boys' family members were typically not present during these events, which often included overnight camping trips. *Cf. Beers*, 316 P.3d at 98 ("having control over someone or a duty to protect that person is indicative of a special relationship"). Further, it appears that the boys' participation in scouting was far more formal and structured than Beers' participation in the "loosely organized" ward campout. Finally, many plaintiffs allege that they were abused in the very midst of the organized scouting activities – often in their tents during the overnight scout camping trips.

It is unclear at this point whether the plaintiffs will be able to prove these factual allegations, but *Beers* does not foreclose plaintiffs from attempting to establishing facts to support the existence of a confidential relationship that would, in turn, support a constructive-fraud claim.

**4.     Damages**

Finally, the defendants ask the Court to certify this question to the Idaho Supreme Court: *Under Idaho law, are noneconomic damages available in a claim for constructive fraud?*

The Court declines to certify this question for two reasons. First, the Court is not convinced that this is a controlling question. A question of law is controlling when "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir.1981). Controlling questions typically involve fundamental determinations like, who are the necessary proper parties, whether jurisdiction is proper, or whether state or federal law applies. *Id*. In this case, plaintiffs are seeking to recover both pecuniary and non-pecuniary damages, so deciding whether one category of damages is available is not the sort of fundamental determination that typically arises within a "controlling question."

The Court recognizes that if non-pecuniary damages are unavailable, for all practical purposes, the lawsuit might be over. As defendants have pointed out, the large bulk of plaintiffs' damages are noneconomic damages, and the lawsuit would likely resolve fairly quickly if plaintiffs were limited to pecuniary damages. So there is at least

an argument that this is a controlling question because even though it is not dispositive, an answer to the question would materially affect the outcome of the litigation.

But that leads to the second point: The Idaho Supreme Court has already provided sufficient guidance on this question. Although the Idaho Supreme Court has held that non-pecuniary damages *generally* are not recoverable in fraud actions, *see Umphrey v. Sprinkel*, 682 P.2d 1247, 1259 (Idaho 1983), it has more specifically held that a plaintiff who succeeded on a constructive-fraud claim could recover non-pecuniary damages, *see McGhee v. McGhee*, 353 P.2d 760, 764 (Idaho 1960). In *McGhee v. McGhee*, the defendant's second wife sued her husband for constructive fraud after he failed to tell her he was still married to his first wife. *See id.* The *McGhee* Court allowed the second wife to recover damages for humiliation, disgrace, and mental anguish arising from this failure to disclose. The court explained the general rule of damages in these sorts of cases:

> Damages in an action by a woman against a man for fraud in inducing her to enter into a marriage *are not limited to pecuniary loss, but cover change of single status, humiliation, disgrace, mental anguish, and deprivation of that conjugal society, comfort, and attention to which one is entitled by reason of the change from single to marital status.* Such damages are naturally somewhat speculative, depending on the circumstances of the particular case, and their computation is largely in the discretion of the jury.

*Id.* (citations omitted; emphasis added). By allowing non-pecuniary damages, *McGhee* apparently recognized that certain types of fraud claims can be dignitary torts, as opposed to economic torts. *See also* Andrew L. Merritt, *Damages for Emotional Distress in Fraud Litigation: Dignitary Torts in a Commercial Society*, 42 Vand. L. Rev. 1, 31 (1989) (generally asserting that fraud should be perceived as a dignitary tort, not merely

an economic tort).

Based on guidance from *McGhee*, this Court declines to certify the damages question to the Idaho Supreme Court.

**5.      Motion to Stay**

The Court will stay all proceedings in this matter during the certification process. District courts weigh the following factors in deciding whether to grant a stay: "[1] the possible damage that may result from granting a stay, [2] the hardship or inequity a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

As for the first factor – the possible damage that will result from a stay – plaintiffs point out that discovery will be delayed. But this will often be true when a pre-trial stay is granted. And plaintiffs have not articulated any more specific harm that will result from delayed discovery. Further, as defendants have pointed out, the evidence in this case is already quite old – decades old in many cases – so staying discovery would not appreciably impact discovery. The Court thus finds that the first factor narrowly favors a stay.

The second and third factors, by contrast, weigh heavily in favor of a stay.

The second factor deals with the anticipated hardships of forcing the parties to proceed. Here, both sides anticipate significant amounts of discovery. Plaintiffs generally say that "a great deal of discovery" will be conducted, *Response,* Dkt. 57, at 4,

while defendants more specifically estimate over 140 depositions and several thousand pages of discovery, *Mot. Mem*, Dkt. 39-1, at 5. It is theoretically possible that a ruling from the Idaho Supreme Court on the certified questions could render much of this discovery unnecessary. Forcing parties to engage in potentially needless discovery – particularly so much of it – is a hardship to both sides.

As for the third factor – the orderly course of justice – staying the case is the most sensible, orderly thing to do. A ruling from the Idaho Supreme Court on the two certified questions will clarify the issues in this lawsuit, which will, in turn, clarify the scope of discovery. The Court will therefore grant the motion to stay.

## ORDER

It is **ORDERED that:**

(1) The Motion to Certify Controlling Issues to the Idaho Supreme Court is (Dkt. 38) **GRANTED in part and DENIED in part.**

(2) The following questions are certified to the Idaho Supreme Court:

    a. What statute of limitations applies to a constructive-fraud claim where plaintiff alleges that a breach of duty resulted in sex abuse?

    b. When does a claim for constructive fraud related to childhood sex abuse accrue?

(3) Pursuant to Idaho Appellate Rule 12.3(b), the Clerk of the Court shall file a certified copy of this Order with the Idaho Supreme Court.

(4) The Motion to Stay (Dkt. 39) is **GRANTED.**



DATED: June 4, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court