Thomas A. Banducci (ISB 2453)
*tab@andersenbanducci.com*
Wade L. Woodard (ISB 6312)
*wlw@andersenbanducci.com*
Brent Bastian (ISB 8071)
*bsb@andersenbanducci.com*
**ANDERSEN BANDUCCI PLLC**
101 South Capitol Boulevard, Suite 1600
Boise, ID 83702-7720
Telephone: 208.342.4411
Facsimile:  208.342.4455

*Attorneys for Defendant Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-day Saints and Defendant Corporation of the President of The Church of Jesus Christ of Latter-day Saints and Successors*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOES I-XIX, and JOHN ELLIOTT,<br><br>        Plaintiffs,<br><br>vs.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to do business in Idaho,<br><br>        Defendants. | Case No. 1:13-cv-00275-BLW<br><br>**OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THIRD AMENDED COMPLAINT TO ADD FRAUD CLAIM (Dkt. No. 98)** |

**OPPOSITION TO MOTION TO AMEND** - 1

Defendants Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-day Saints and Corporation of the President of The Church of Jesus Christ of Latter-day Saints ("Church Defendants"), by and through counsel, respectfully submit this Opposition to Plaintiffs' Motion to Amend Third Amended Complaint to Add Fraud Claim.  Dkt. No. 98.  (The Memorandum in Support of this Motion, found at Dkt. No. 98-1, will be referred to herein as the "Motion").

## <u>INTRODUCTION</u>

Plaintiffs have four times amended their original complaint. They now seek leave from the Court to amend for a fifth time, in order to add a fraud claim. Simply put, Church Defendants object to this fourth amendment because it comes many months past the deadline, and, even if the amendment were permitted, the proposed claim would fail to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

There is no question that this Motion to Amend comes several months too late. It has been 21 months since the deadline for motions to amend pleadings in this case has passed. Moreover, by Plaintiffs' own admission, it has been nearly a year since they first expressed their intent to add a fraud claim. Yet, they delayed filing their motion to amend until 4 months after the Court lifted the stay in this matter.  Plaintiffs have not proffered any explanation whatsoever for this delay, let alone made a showing of good cause.

Even if Plaintiffs proposed amended complaint was not late, it is futile.  It does not satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Even under a generous reading, the proposed amended complaint does not allege fraud with particularity as to each of the Plaintiffs.  Thus, if the proposed amendment is permitted, Church Defendants would prevail on a motion to dismiss under Rule 9(b) and the newly added claim would be dismissed.

**OPPOSITION TO MOTION TO AMEND** - 2

## BACKGROUND

Plaintiffs filed their initial Complaint on June 24, 2013.  Dkt. No. 1.  On February 5, 2014, the Court issued a scheduling order setting the deadline for motions to amend the pleadings as April 21, 2014.  Dkt. No. 46. That Order provides that the deadline would "only be extended for good cause shown," and that "[a]ll parties are entitled to know the claims and parties well before trial rather than be forced to pursue or defend against a moving target." *Id*.

Plaintiffs had a ten-month window between their initial filing and the Court's April 21, 2014 deadline in which to amend their complaint.  This they did, four times – once as a matter of right, and three more upon leave granted by the Court.  *See* Dkt. Nos. 5, 23, 30, and 63.  The last of these amendments came on May 19, 2014, a month after the original scheduling deadline passed.  At no time in the course of these four amendments did Plaintiffs ever seek to amend their complaint to include a claim for fraud.  *Id.*

On June 4, 2014, six weeks after the deadline, and two weeks after Plaintiffs' May 19, 2014 Motion to Amend, the Court issued an order staying these proceedings and certifying certain questions of law to the Idaho Supreme Court.  *See* Dkt. No. 69.  On September 21, 2015, the Court issued another order activating the case.  Dkt. No. 86.

By Plaintiffs' own admission, during this 15-month window that the case was stayed, they acknowledged they knew the facts necessary to plead a fraud claim and then twice expressed an intent to file a Motion to Amend to add a fraud claim.  *See* the Motion at 2, 9-10; the Declaration of Brent Bastian ("Bastian Dec.") in Support of this Opposition at its Ex. A, which is a copy of Plaintiffs' Opening Brief before the Idaho Supreme Court, at viii, fn.3; Bastian Dec. at its Ex. B, which is a copy of Plaintiffs' Reply Brief before the Idaho Supreme

**OPPOSITION TO MOTION TO AMEND** - 3

Court, at 2, fn.2.  Notwithstanding these expressions of intention, Plaintiffs inexplicably did not

file their Motion to Amend until several months later, on January 28, 2016.

## ARGUMENT

### I.    Plaintiffs' Motion to Amend must be denied because it is too late.

Plaintiffs' Motion can and should be denied based on the fact that it has cited the wrong

rule as the applicable authority and thus applied the wrong standards.  Plaintiffs erroneously

spend almost all of their Motion explaining why they meet FED. R. CIV. P. 15's relatively

permissive amendment requirements.  Motion at, *e.g.*, 5.[1]  Rule 15(a), as Plaintiffs correctly

point out, generally provides that "a party may amend its pleading only with the opposing party's

written consent or the court's leave" and that the court should give this leave "freely . . . when

justice so requires." Motion at 5.  However, when a proposed amendment to a pleading comes

*after* a scheduling deadline, as here, it is not the generous Rule 15(a) standard which controls.

Rather, it is the more stringent requirements of Rule 16(b) which govern.  Indeed, this Court has

reminded Plaintiffs of this markedly different standard *in the very scheduling order which is at

issue here*:

> The Ninth Circuit has held that motions to amend filed after the Scheduling Order
> deadline are governed, not by the liberal provisions of Fed. R. Civ. P. 15(a), but
> instead, by the more restrictive provisions of Fed. R. Civ. P. 16(b) requiring a
> showing of "good cause." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604
> (9th Cir. 1992).

Dkt. No. 46 at 2-3, fn.1; *see also Robinson v. Twin Falls Highway Dist.*, 233 F.R.D. 670,

672 (D.Idaho 2006) (Winmill, J.) (it is true that "Rule 15 provides [an] avenue for amending

---

[1] Plaintiffs technically begin their legal analysis by citing to FED. R. CIV. P. 18(a). It is true that
Rule 18(a) states that a party may, generally, join "as many claims as it has against an opposing
party." However, this rule deals only with *initial* pleadings. See *Notes of Advisory Committee on
Rules – 1966 Amendment*, Fed. R. Civ. P. 18(a).  It does not, as Plaintiffs imply, provide any
support for the belated joinder of claims which could and should have been brought previously.

**OPPOSITION TO MOTION TO AMEND** - 4

pleadings. … However, once a scheduling order has been entered pursuant to Rule 16(b), the more restrictive provisions of that subsection requiring a showing of 'good cause' for failing to amend prior to the deadline in that order apply.").

Thus, the analysis in Plaintiffs' Motion regarding bad faith, undue delay, prejudice, futility, and the burden of proving prejudice is inapposite, since these factors are the standards for amendments under Rule 15(a), not Rule 16. *See, e.g., Roth v. Marquez,* 942 F.2d 617, 628 (9th Cir.1991). Instead, as this Court itself has noted, the *only* factor that may be considered when determining whether to grant a late amendment under Rule 16(b) is "good cause." *Sadid v. Vailas*, 943 F.Supp.2d 1125, 1139 (D. Idaho 2013). And "good cause," in turn, is almost solely determined by the moving party's diligence: "Unlike Rule 15(a)'s liberal amendment policy, which focuses on … the prejudice to the opposing party, the good cause standard set forth in Rule 16 primarily focuses upon the diligence of the party requesting the amendment. '*If that party was not diligent, the inquiry should end*.'" *Id.* (emphasis added; quoting from *Johnson,* 975 F.2d at 607).

Plaintiffs made no attempt to show diligence likely because the evidence demonstrates that Plaintiffs were not diligent in their filing of this Motion to Amend. They had multiple windows in which they could have timely filed the motion, and they did not.

- There was an initial ten-month window before the original scheduling deadline. As noted above, Plaintiffs amended their complaint three times in this window, but did not include a claim for fraud.

- There was a six-week window between the expiration of the deadline and the certification of questions to the Supreme Court. Plaintiffs amended their complaint once in this window, but did not include a claim for fraud.

**OPPOSITION TO MOTION TO AMEND** - 5

- There was a fifteen-month window, during which the proceedings were stayed, in which Plaintiffs not only could have prepared this Motion, but in which they *twice* expressed the intent to do just that. Yet, they did not use this time to prepare or file the motion.  Motion at 2, 9-10; Bastian Decl., Ex. A at viii, fn. 3 & Ex. B at 2, fn.2.

Instead, it was not until January 28, 2016 – 31 months after the initial complaint was filed, 21 months after the original amendment deadline passed, 20 months after their last Motion to Amend was filed, 19 months after proceedings were stayed, 11 months after they first expressed an intent to add a claim for fraud, and 4 months after they re-asserted that intention when the stay on proceedings was lifted, that Plaintiffs actually filed a Motion seeking to add the fraud claim.  There was no diligence on the Plaintiffs' part, only delay.

Critically, Plaintiffs have not even attempted to offer an explanation for their delay (be it 31 months, or only 4 months), let alone made the necessary showing of good cause and diligence.  *Sadid*, 943 F.Supp.2d at 1139.  At a minimum, the party attempting to show good cause must adequately explain what attempts at diligence were made so that they can be evaluated.  *See In re Zicam Cold Remedy Lit.*, 2010 WL 3999091, *1 (D.Ariz., 2010) (denying a tardy request for amendment because the moving party's attorney gave "no explanation" as to the details of her delay).  But because Plaintiffs are clearly confused by what standard applies (even though this Court specifically told them in the Case Management Order), they have not so much as attempted to demonstrate their "diligence."

Indeed, the only statement that even resembles an attempt at an explanation for Plaintiffs' delay is this: "Though Plaintiffs' filed this case in 2013, the case was stayed for over a year . . . Plaintiffs' counsel indicated at the case management conference . . . that they would be moving to amend."  Motion at 9-10.  But this statement does not explain why the amendment was not

**OPPOSITION TO MOTION TO AMEND** - 6

made before the deadline and does not explain why the amendment was not sought before the stay was entered.  Moreover, it does not explain why Plaintiffs waited for four months after the stay was lifted to seek the amendment.  Again, Plaintiffs themselves admit that they knew a year ago that they wanted to amend—"when the underlying case is activated at the U.S. District Court, *Plaintiffs will amend their allegations* to separate their claims for actual and constructive fraud into two causes of action"—and then reiterated that desire in September of 2015.  *Id.*; Bastian Decl. at its Ex. A at viii, fn. 3 & Ex. B at 2, fn.2 (emphasis added).  Yet they inexplicably did nothing, for months and months.

Oddly, Plaintiffs point to that fact that they repeatedly announced that they wanted to amend as a reason to grant their amendment.  Motion at 10.  But that admission is fully dispositive to the only issue of relevance here:  Plaintiffs' diligence.  Effectively, Plaintiffs' argument is "we told you we wanted to file it eventually, so we should be allowed to file it whenever we see fit."  But the token expression of intent is not an explanation of an attempt at diligence.  Instead, it is a concession that Plaintiffs consciously sat on their hands for several months without any justification for so doing.  This is the antithesis of the "good cause" standard governing Rule 16.  *Sadid*, 943 F.Supp.2d at 1139.[3]

To reiterate, if Plaintiffs were "not diligent, the inquiry should end."  *Id.*  Because Plaintiffs' were not diligent in filing their Motion to Amend, and because they offered *no*

---

[3] Moreover, Plaintiffs' admissions foreclose the possibility of an argument that they only recently discovered new evidence that would necessitate an amendment.  In addition to the foregoing, Plaintiffs specifically noted before the Idaho Supreme Court that based solely on the information they had on hand more than a year ago, the current amendment could be sought: "As Plaintiffs stated in their opening brief, their allegations are labeled as 'Constructive Fraud,' but cover actual ***and*** constructive fraud. *See* App.'s Br. at viii, n. 3. *Plaintiffs' [current] allegations are broad enough and pleaded with sufficient particularity to encompass actual fraud claims*." Bastian Decl., Ex. B at 2, fn.2 (some emphasis added); *see also* Bastian Dec., Ex. A at viii, n. 3.

**OPPOSITION TO MOTION TO AMEND** - 7

explanation for their lack of diligence, there is no good cause for their delay. The inquiry should accordingly end, and the Motion to Amend should be denied.  *Id.*[4]

II.    **Plaintiffs' Motion to Amend should be denied because its new claim fails as a matter of law under Rule 9(b).**

Even if Plaintiffs' Motion to Amend was not extremely and inexplicably late, it would be futile to grant the motion because the proposed amended complaint, which adds a cause of action for fraud, fails to plead that cause of action with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) requires a high level of particularity in pleading – a level which Plaintiffs have not met.[6]  Their proposed amendment would accordingly be futile.

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal[.]"  *Steckman v. Hart Brewing,* 143 F.3d 1293, 1298 (9th Cir. 1998) (citations omitted).  Thus, a proposed pleading which fails to meet Rule 9(b) should not be allowed. *See In re Fritz Cos. Sec. Litig.,* 282 F.Supp.2d 1105, 1111 (N.D. Cal. 2003) ("[I]n order to analyze the potential futility of the [proposed complaint], this court must determine if it withstands Rules 12(b)(6) and 9(b)…").

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "To satisfy

---

[4] Because Plaintiffs applied the wrong standard and do not seem to recognize their mistake, Church Defendants are concerned that they will attempt to use their reply to present new arguments.  Any such attempt would be unallowable, because, as this Court has noted, it is improper to posit new arguments in a reply brief.  *De Grande Living Trust v. World Sav. Bank,* 2009 WL 89644, at *14, fn. 4 (D. Idaho 2009); *United States v. Wright,* 215 F.3d 1020, 1030 (9th Cir. 2000) (court "decline[d] to consider" a "new argument [raised] for the first time in his reply brief").

[6] What follows is only a summary of the general weakness of Plaintiffs' pleading. Even this cursory review of law and facts is sufficient to demonstrate that Rule 9(b) requires more than what Plaintiffs have provided. A deeper and more nuanced challenge based on Rule 9(b) will be filed later, if and when required.

**OPPOSITION TO MOTION TO AMEND** - 8

Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *U.S. v. Gen. Dynamics C4 Sys.,* 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotations and citations omitted). Reliance on general assertions of fraudulent conduct is insufficient. *Id.* In other words, "the party alleging fraud must support the existence *of each of the elements* of the cause of action for fraud *by pleading with particularity the factual circumstances* constituting fraud." *Estes v. Barry*, 132 Idaho 82, 86, 967 P.2d 284, 288 (1998) (in the context of Idaho's Rule 9(b)). "The absence of any one of the elements is fatal to recovery." *Witt v. Jones*, 111 Idaho 165, 168, 722 P.2d 474, 477 (1986).

The elements of actual fraud under Idaho law are: (1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer, (8) justifiable reliance; and (9) resultant injury. *Lettunich v. Key Bank*, 141 Idaho 362, 109 P.3d 1104, 1110 (2005).

Plaintiffs' have alleged Church Defendants committed fraud against ten individuals. Thus, in order to maintain a fraud claim under Rule 9(b), the proposed amended complaint would have to allege, with particularity: (1) the specific statements made to each of these defendants; (2) the falsity of those statements; (3) the materiality of those statements; (4) who the speaker of the statements were to each of the 10 Plaintiffs, and that the speaker(s) had knowledge of the falsity of the statements; (5) that the speaker(s) intended reliance by each of the 10 Plaintiffs; (6) that each of the 10 individuals, as hearers of the statements, were ignorant of the falsity of the statements; (7) that each of the 10 hearers relied on these statements; (8) that each of the 10 hearers reliance was justifiable, and (9) that each of the 10 suffered a resultant injury.

**OPPOSITION TO MOTION TO AMEND** - 9

Even a cursory review of the proposed amended complaint proves that it does not come close to doing this.

Indeed, Plaintiffs' proposed amended complaint does little more to support its actual fraud claims than strike the word "constructive" from its allegations.  See, e.g., *Proposed Amended Complaint* at ¶ 125.  It does not identify specific statements made to each of the Plaintiffs, but instead relies on general descriptions of scout characteristics in the Scout Handbook, *id*. at 118, and unspecified "representations regarding the wholesomeness, trustworthiness, and mortal [*sic*] integrity of Scouting and Scout leaders."  *Id*. at ¶ 121.  Even if these statements did constitute the "what," Plaintiffs fail to allege with particularity, the "who . . . when, where, and how," of these statements' fraudulence.  There is no description of *when*, or even *if*, these particular representations were made to each of the 10 Plaintiffs.  To be sure, there is a *general* assertion that they were made, but there is no particularity which would enable Church Defendants to refute the specific allegations.  This deficiency alone is enough to doom a fraud claim, but it is far from the only element of fraud which lacks the Rule 9(b)'s required particularity.

For example, Plaintiffs' proposed amended complaint also alleges that Church Defendants "failed to remove specific scout leaders from scouting, or take other steps to prevent those Scout leaders from further interacting with youth in Scouting, about which Defendants had specific notice that they were dangerous to youth in scouting," *id*. at ¶ 121, but the pleading does not state *who* among Church Defendants knew *what* in particular, or *when* those individuals were made aware, or even *how* they were made aware.  Indeed, Plaintiffs failed to even allege who *might* have known what, when.  There are bald allegations that the Church Defendants knew,

but, with limited exception, no particularity – especially not as relates to each of the 10 plaintiffs who make claims against Church Defendants. *Id.*

Likewise, the proposed amended complaint lacks particularity with regard to a speakers' personal knowledge of the falsity of the alleged representations.  Again, Plaintiffs only make vague and conclusory allegations:  "Defendants knew that their fraud consisted of false representations, or Defendants made their fraud with reckless disregard for the truth." *Proposed Amended Complaint* at ¶ 126.  *How* did Defendants know their statements were false?  *How* do Plaintiffs know that Defendants understood that the statements were false when made?  *What* in particular do Plaintiffs base this allegation on?  None of these questions are answered.  *Id.*  Nor is there particularity with regard to intended reliance, each of the hearers ignorance of the falsity of any representations made to them (which, again, have not been specified), each of the Plaintiffs' reliance on the statements, or the justifiability of each of the Plaintiffs' reliance.  About the only thing pled with particularity is that the Plaintiffs were injured.

Absence of particularity regarding even one element of fraud is fatal to the claim.  *Estes*, 132 Idaho at 86. Plaintiffs have failed to plead most, if not all, of the elements of their purported fraud claim with any particularity. As a result, the proposed amended complaint would not withstand a Rule 9(b) challenge and is therefore, futile.

## Conclusion

In conclusion, Plaintiffs' instant Motion is, no matter how measured, extremely late. It could have been filed 31 months ago. Or 21 months ago. Or 19 months ago. Or 4 months ago. It was not. Plaintiffs have failed to provide any reason for the lateness of their filing. They have made no showing of diligence, or of any attempts to prepare or file the Motion during any of the

**OPPOSITION TO MOTION TO AMEND** - 11

various windows available to them. Nor have they otherwise shown good cause, as required by Rule 16(b). Therefore, the Motion should be denied.

Moreover, even if the Motion were not late, it should be denied because the proposed amended complaint fails to allege fraud with the particularity required by Rule 9(b), and would not survive the challenge that will come if the amendment is permitted.

DATED this 22nd day of February 2016.

ANDERSEN BANDUCCI PLLC


_____/s/ Brent S. Bastian_____
Brent S. Bastian
*Attorneys for Defendant Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-day Saints and Defendant Corporation of the President of The Church of Jesus Christ of Latter-day Saints and Successors*

**OPPOSITION TO MOTION TO AMEND** - 12

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February 2016, I caused a true and correct copy of

the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF

system, which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Andrew M. Chasan | andrew.chasan@chasanwalton.com |
| Timothy C. Walton | timwalton2000@hotmail.com |
| Gilion C. Dumas | gilion@dumaslawgroup.com |
| Ashley L. Nastoff | ashley@dumaslawgroup.com |
| Stephen R. Thomas | srt@moffatt.com |
| Mindy M. Willman | mmw@moffatt.com |
| Tyler J. Anderson | tya@moffatt.com |

_____/s/_____

Brent S. Bastian

**OPPOSITION TO MOTION TO AMEND** - 13