UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOE I-XIX and JOHN ELLIOTT,<br><br>     Plaintiffs,<br><br>     v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to business in Idaho,<br><br>     Defendants. | Case No. 1:13-cv-00275-BLW<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>**FILED UNDER SEAL** |

## INTRODUCTION

Pending before the Court is the LDS Church Defendants' Motion for Summary Judgment Against John Doe XII (Dkt. 183) and Motion to Seal (Dkt. 182). Also pending before the Court is Doe XII's Motion to Seal (Dkt. 202). Briefing on summary judgment was completed on June 22, 2017. The Court heard oral argument on June 27, 2017 and

took the matter under advisement. For the reasons described below, the Court will deny the Church Defendants' Motion for Summary Judgment. The parties' respective Motions to Seal are granted in part and denied in part.

## BACKGROUND

Plaintiff John Doe XII participated in a Scout troop sponsored by the Nampa 2nd Ward of the LDS Church. *Def.'s Br.* at 2, Dkt. 183-1. In 1974, when Doe XII was twelve, his scoutmaster, Larren Arnold, sexually abused him on two separate occasions. *Pl.'s Statement of Facts* ¶ 4, Dkt. 203-1. In May 2001, Doe XII contacted the Church Defendants regarding the abuse he suffered as a child, and asked for recompense. *Def.'s Br.* at 3, Dkt. 183-1. Doe XII sent a follow-up letter in June, asking for a response, and at some time later he spoke on the phone with attorneys for the Church. *Id.* at 3, 5.

Following this phone call, Doe XII met in person with an attorney for the Church, and signed a "Settlement Agreement and Release of All Claims" (the "Agreement"). *Id.* at 5. The Agreement contained a clause releasing the Church Defendants "from any and all past, present or future claims, whether for direct or for vicarious liability, for damages for personal and other injuries, and contract claims, which the Releasor has, or claims to have, for or in any manner arising out of" the abuse he suffered. *Woodard Decl.* Ex. G ¶ 2, Dkt. 183-9.

Also during 2001, Doe XII contacted attorney Tim Kosnoff about the potential for a lawsuit against the Church Defendants. *See Woodard Decl.* Ex. F at 197:22-25, Dkt. 183-8. Based on his conversation with Mr. Kosnoff, Doe XII believed his case had "great

potential" but knew that Mr. Kosnoff was concerned there might be an issue with the statute of limitations. *Id*. at 225:16-22, 226:19-25. This conversation happened prior to Doe XII's meeting with the representative from the Church Defendants, at which he signed the release. *Id*. at 227:3-9.

During 2007, Doe XII was briefly represented by the law firm Chasan & Walton. *Chasan Decl.* ¶ 2, Dkt. 203-2. In July 2009, Chasan & Walton were retained as local counsel in *Tom Doe v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, a case which alleged fraud by the Church Defendants in relation to sexual abuse perpetrated by Larren Arnold. *Pl.'s Statement of Facts* ¶ 11, Dkt. 203-1.

In February 2014, Doe XII joined this lawsuit, alleging that the Church Defendants made fraudulent misrepresentations about the safety of Scouting, upon which Doe XII relied in deciding to participate in Boy Scouts. *Second Am. Compl.* ¶ 101-02, Dkt. 47. Doe XII further alleged that, as a result of the Church Defendants' constructive fraud, Doe XII incurred both physical and emotional damages. *Id.* ¶ 115.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or

defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact

"that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party,

and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the

non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d

1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt

unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d

1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a

genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

2001)(en banc). To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply point out

the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman

Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to

support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party

must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions,

answers to interrogatories, or admissions on file" that a genuine dispute of material fact

exists. *Celotex,* 477 U.S. at 324.

**ANALYSIS**

**1.      Choice of Law**

A federal district court exercising diversity jurisdiction must apply the procedural

law, including statutes of limitations, of the forum state. *See Erie R.R. Co. v. Tompkins*,

304 U.S. 64, 78 (1938); *see also Guaranty Trust v. York*, 326 U.S. 99, 110 (1945. In

deciding what substantive law applies, the court must look to the choice-of-law rules of

the forum state. *York*, 326 U.S. at 110. As Idaho is the forum state, both the statute of

limitations and the choice-of-law rules are governed by Idaho law.

To determine the validity of a contract and the substantive rights of the parties to

the contract, Idaho choice-of-law rules look first to the law of the state contemplated by

the parties. *See Carroll v. MBNA America Bank*, 220 P.3d 1080, 1084 (Idaho 2009). So

long as the chosen state has a substantial relationship to the parties or the transaction and

no other state has a more significant relationship and greater interest in determination of

the issues, courts should apply the law of the chosen state. *Id.* at 1084-85 (*citing*

Restatement (Second) of Conflict of Laws §§ 187-88). Per the express language of the

Agreement, the parties selected Utah law to govern the substance and validity of the

contract at issue. *See Woodard Decl*. Ex. G ¶ 7, Dkt. 183-9. Moreover, there is a

substantial relationship between Utah law, the parties, and the agreement, which is not

outweighed by any other state. Doe XII was living in Utah at the time he signed the

Agreement, the offices of the LDS Church Defendants are located in Utah, and the agreement was signed in Utah. *See Def's Br.* at 5 ¶ 15, Dkt. 183-1; *Woodard Decl.* Ex. G at 2, Dkt 183-9. Thus, the validity and scope of the agreement must be analyzed under Utah law.

## 2.  Application of the Agreement to Doe XII's Constructive Fraud Claim

Under Utah law, "[a] contract term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Judge v. Saltz Plastic Surgery, P.C.*, 367 P.3d 1006, 1015 (Utah 2016) (internal quotations omitted). "Where a contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Layton City v.* Stevenson, 337 P.3d 242, 247-48 (Utah 2014) (internal quotations omitted). A genuine issue of fact concerning the terms of a release creates a question for the jury, and is sufficient to preclude summary judgment. *Horgan v. Industrial Design Corp.*, 657 P.2d 751, 752-53 (Utah 1992). At issue is whether the Agreement, by its terms, expresses the unambiguous intention of the parties to preclude Doe XII from bringing a constructive fraud claim.

Doe XII argues there is a genuine dispute as to whether the parties intended to bar his constructive fraud claim. Doe XII released the Church Defendants from "any and all past, present or future claims, whether for direct or for vicarious liability, for damages for personal and other injuries, and contract claims, which the Releasor has, or claims to have, for or in any manner arising out of" the sexual abuse of Doe XII. *Woodard Decl.*

Ex. G ¶ 2, Dkt. 183-9. Doe XII argues that his constructive fraud claim is not barred because the Church Defendants' alleged fraud did not arise from the abuse, but rather gave rise to it. The Church Defendants, however, argue that Doe XII's claim is barred by the Agreement because the only injuries he alleges undisputedly arise out of the abuse. This analysis ignores the distinction between Doe XII's asserted injuries and his claim.

As this Court has already held, Doe XII's claim is not defined by the injuries he asserts. *Doe I v. Boy Scouts of America*, 1:13-cv-00275, 2014 WL 2515734 at *3 (D.Idaho June 4, 2014) ("this Court does not believe that focusing solely on one of the harms alleged – physical injury – captures the substance of the plaintiffs' claims."). Doe XII has not brought a personal injury claim based on the abuse he suffered, but instead joins the other Plaintiffs in claiming the Church Defendants "deceived them by telling them to trust their Scoutmasters and, at the same time, *not* telling them about the dangers of pedophilic Scoutmasters." *Id.* The Idaho Supreme Court similarly rejected the idea that Plaintiffs' constructive fraud claim could be defined by nature of the harm asserted. *See Doe v. Boy Scouts of America*, 356 P.3d 1049, 1052 (Idaho 2015) (declining to apply a personal injury statute of limitations to a constructive fraud claim, even where plaintiffs asserted injuries stemming from sexual abuse rather than economic harm). The Church Defendants cannot rely on the nature of Doe XII's asserted injuries as shorthand for the claim itself. Rather, whether Doe XII's claim arises out of the abuse depends on how the contract term "arises out of" is defined under Utah law.

In the context of liability insurance, the Utah Supreme Court interpreted the phrase "arising out of" to require a causal nexus between an injury and the insured property. *See Nat'l Farmers Union Prop. & Cas. Co. v. W. Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978) ("The words import a concept of causation; there must be a causal nexus between an injury and the [insured property].""). In determining whether a causal nexus existed the court in *Farmers Union* looked at whether the alleged acts "leading to the injury in plaintiff's complaint . . . arose from, originated, and were connected with" the insured property. *Id.* at 964. Thus, although the injury is an element of the claim for liability, the claim does not arise out of the injury. Instead, the claim for liability arises out of the relationship between the insured property and the events and acts that led to the injury. *See id.* (declining to find that the policy at issue applied where the alleged acts leading to injury arose from the uninsured property). Here, Doe XII's claim is for constructive fraud, in which the alleged misrepresentations of the Church Defendants led to the abuse he suffered. In other words, his claim for constructive fraud arose from, originated, and was connected with the Church Defendants' alleged misrepresentations about the safety of Scouting, which led to his injuries. Although the injuries Doe XII suffered as a result of being abused are an element of his claim for constructive fraud, the claim arises from the events and acts that led to the abuse, not the abuse itself.

Though the Agreement bars claims that arise out of the sexual abuse committed by Larren Arnold, it is silent as to claims that resulted in the abuse. Thus, there is a genuine issue of fact as to whether the parties intended to preclude such claims. This issue must

be resolved by the jury. *See Horgan v. Industrial Design Corp.*, 657 P.2d 751, 752-53 (Utah 1992). For that reason, the Court will deny the Church Defendants' Motion for Summary Judgment on the grounds that there is a question of fact as to whether the parties intended the Agreement to bar Doe XII's claim for constructive fraud.

**3.       Whether the Agreement is void for mistake, fraud, or duress.**

Even if a jury were to find that his claim was barred, Doe XII argues that the Agreement is void on the grounds of mistake, fraud, or duress. Doe XII fails, however, to properly present any claim for rescission under Utah law that is not barred by the statute of limitations in this forum.[1] First, Doe XII claims the Agreement does not bar him from bringing a constructive fraud claim where he was unaware of the facts underlying the alleged fraud at the time he signed the release. Second, Doe XII argues that the Agreement is void on the grounds that the Church Defendants made material

---

[1] The Church Defendants argue that Doe XII's rescission claims fail because he did not timely offer to tender back the $50,000 paid to him in consideration for the Agreement. *Def's Br.* at 11, Dkt. 183-1. Generally, timely tender back is a condition precedent to rescission of a contract. *See Perry v. Woodall*, 438 P.2d 813, 815 (Utah 1968) ("one electing to rescind a contract must tender back to the other contracting party whatever property of value he has received."). Although the Utah Supreme Court suggested in dicta that timely tender back may not be necessary where a release was secured through fraud, it has only applied this principle in insurance disputes when amount tendered was admittedly owed under a particular claim. *See Reliable Furniture Co. v. Fid. & Guar. Ins. Underwriters*, 398 P.2d 685, 687-88 (Utah 1965) (finding that tender back was not necessary where the defendant's own evidence showed the plaintiff was owed the disputed amount); *see also Simonson v. Travis*, 728 P.3d 999, 1002 (Utah 1986) (holding that tender back was not necessary where the amount tendered was admittedly owed to plaintiff on the release of her claim for property damage). Here, the Church Defendants' have not admitted to any liability for the claims settled by the Agreement. *See Woodard Decl.* Ex. G ¶ 1, Dkt. 183-9. Because the Church Defendants are not undisputedly liable to Doe XII for $50,000 on any claim settled under the Agreement, the general rule applies. Doe XII cannot seek rescission of the Agreement without tendering back the benefit he obtained.

misrepresentations as to their knowledge of Arnold's "dangerous condition" and as to the application of the statute of limitations to Doe XII's claim. Under Idaho law, the statute of limitations for relief on the grounds of fraud or mistake is three years. Idaho Code § 5-218(4). The statute "does not begin to run until the plaintiff knew or reasonably should have known the facts constituting the fraud." *Doe v. BSA.*, 356 P.3d at 1057.

Doe XII's claims for rescission on the grounds of fraud and mistake depend on facts that Doe XII knew or should have known at the time he filed his Complaint in February 2014. Doe XII did not include any claim for rescission in his Complaint, nor did he file a formal motion seeking rescission of the Agreement before the limitations period lapsed in February 2017. *See Pl.'s Statement of Facts* ¶ 25, Dkt. 203-1. Rather, Doe XII first raised these issues in June 2017, in response to the Church Defendants' Motion for Summary Judgment. *Pl.'s Br.*at 7, Dkt. 203. Thus, Doe XII's claims that the Agreement is void on the grounds of fraud or mistake are barred by the statute of limitations.

Doe XII further argues that the Agreement is void because he signed it under duress. *Pl.'s Br.* at 10, Dkt 203.  Under Utah law, whether a contract is voidable for duress is governed by § 175 of the Restatement (Second) of Contracts. *See Andreini v. Hultgren*, 860 P.2d 916, 921 (Utah 1993) (adopting the Restatement (Second) of Contracts § 175 (1981)). Thus, "a contract may be voided if a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative." *Id.* (internal quotations omitted). Doe XII has failed to show that he had no reasonable alternative to signing the agreement.

Pursuing legal action is a reasonable alternative in entering into a contract. *See, e.g.*, Restatement (Second) of Contracts § 175 cmt. b (1981). The risk that legal action may be unsuccessful does not make it unreasonable, and a decision to contract inherently involves the assessment and allocation of such risks. *See Res. Mgmt. Co. v. Weston Ranch and Livestock Co. Inc.*, 706 P.2d 1028, 1040, 1043 (Utah 1985) (finding that "the right to contract freely on terms which establish and allocate risks between the contracting parties is fundamental" and that "virtually all contracts involve the assessment of risks."). Doe XII does not contest that pursuing his legal claim was a reasonable alternative to entering into the settlement agreement. Instead he argues that the Church Defendants improperly induced him to forgo that alternative by misrepresenting his claim as barred by the statute of limitations. Thus, Doe XII's fails to properly present a claim for duress under Utah law. Instead, Doe XII repurposes his arguments that Agreement was procured by fraud.[2] As discussed above, that claim is precluded by the statute of limitations.

### 4. Whether Doe XII's claim is barred by the statute of limitations.

The Idaho Supreme Court held that the three-year statute of limitations in Idaho Code § 5-218(4) applies to constructive fraud cases. *Doe v. Boy Scouts*, 356 P.3d at 1057.

---

[2] Doe XII's argument that the Church Defendants' "one-time, nonnegotiable offer" constituted duress in light of his economic straits fails for this same reason. *Pl.'s Br.* at 10, Dkt 203. Even if the Church Defendants' refusal to negotiate the terms of the settlement constituted an improper threat, Doe XII must show that this threat prevented him from pursing legal action as a reasonable alternative. Doe XII has not shown any reason why he could not pursue such an alternative, other than the alleged misrepresentation regarding the statute of limitations. Thus, his claim is barred.

The statute of limitations began to run when Doe XII knew or reasonably should have known the facts constituting the fraud. *Id.* "[A]ctual knowledge of the fraud will be inferred if the allegedly aggrieved party could have discovered it by the exercise of due diligence." *Nancy Lee Mines, Inc. v. Harrison*, 511 P.2d 828, 829 (Idaho 1973). "Ordinarily, what constitutes reasonable diligence to discover fraud so as to affect the time when the statute of limitations begins to run is a question of fact for the jury." *Full Circle, Inc. v. Schelling*, 701 P.2d 254, 258 (Idaho Ct. App. 1985). Thus, "courts of this state should hesitate to infer knowledge of fraud." *McCoy v. Lyons*, 820 P.2d 360, 368 (Idaho 1991).

Doe XII joined this lawsuit in February 2014. Therefore, if Doe XII knew or reasonably should have known the facts constituting the fraud before February 2011, his claim is barred by the statute of limitations. To prove constructive fraud, a plaintiff must establish (1) a statement or a representation of fact; (2) by a speaker in a relationship of trust and confidence with the hearer; (3) that is false; (4) and material; (5) where the hearer is ignorant of the falsity; (6) justifiably relied on the statement; (7) and suffered resultant injury. *See Doe v. Boy Scouts*, 356 P.3d at 1054-55 (describing the elements of constructive fraud). The only element on which Doe XII arguably did not have knowledge well before 2011 is the alleged falsity of statements by the Church Defendants as to the safety of Scouting before Doe XII was abused. Thus, the central question is when Doe XII knew or should have known that such statements were false, in regards either to Arnold specifically, or to scouting as a nationwide program.

Doe XII alleges that he did not discover facts relating to Arnold's history of abuse or the Church Defendants' history of covering up child sexual abuse until he after he met with his lawyers in 2013. *Pl.'s Br.* at 14, Dkt 203. The Church Defendants do not dispute this, but instead argue that Doe XII was on notice of the fraud as early as 2001 and as late as 2010, and failed to exercise the requisite diligence to discover such facts. *Def.'s Reply* at 10, Dkt 209; *Def.'s Br.* at 16, Dkt. 183-1. Alternatively, the Church Defendants argue that Doe XII's attorneys had knowledge of facts underlying Doe XII's claim as early as 2009, and that such knowledge can be imputed to Doe XII. *Def.'s Br.* at 15, Dkt 183-1.

Under Idaho law, "[t]he discovery rule applicable to fraud requires more than an awareness that something may be wrong but requires knowledge of the facts constituting fraud." *McCoy*, 820 P.2d at 368. In *McCoy*, the Idaho Supreme Court rejected the idea that mere suspicion of wrongdoing is sufficient to trigger the statute of limitations where the aggrieved party did not obtain evidence to substantiate her claim until much later. *Id.* at 369-70 (citing *Carman v. Carman*, 758 P.2d 710 (Idaho Ct. App. 1988)). Thus, knowledge of fraud should not be inferred unless the only conclusion to be drawn from the evidence is that "with reasonable diligence [the aggrieved party] would have discovered the alleged fraud" at a particular time. *Full Circle*, 701 P.2d at 258.

Here, a reasonable jury could conclude that even if Doe XII had suspicions that the Church Defendants committed fraud against him as early as 2001, and as late as 2010 he could not, through the exercise of reasonable diligence, have discovered the necessary facts supporting his constructive fraud claim before February 2011. By 2001, Doe XII

had discovered that the Church Defendants had covered up an incident of abuse by Arnold that occurred several years after Arnold's abuse of Doe XII. *See Woodard Decl.* Ex. E at 2, Dkt. 183-7. The Church Defendants argue that this knowledge should have put Doe XII on notice that he had a potential claim for fraud.[3] Doe XII's fraud claim, however, rests on facts establishing that sexual abuse of scouts, whether by Arnold or other perpetrators, was occurring before Doe XII was abused. Thus, the inference the Church Defendants ask the Court to draw is that Doe XII's knowledge that Arnold abused other scouts in the years after he abused Doe XII should have put him on notice that Arnold may have engaged in abuse in the years prior as well. Even assuming this is a reasonable inference to draw, however, such an inference simply amounts to "an awareness that something may be wrong." *McCoy*, 820 P.2d at 368. Thus, it would not trigger the accrual of Doe XII's claim unless, through reasonable diligence, Doe XII could obtain facts regarding prior abuse by Arnold, specifically, or other perpetrators more generally, at that time. *See id* at 369. There is no evidence that such facts were reasonably discoverable to Doe XII in 2001.

In the alternative, the Church Defendants argue that as of April 2010 there was general public awareness of sexual abuse in scouting, as well as the existence of

---

[3] The Church Defendants rely on *Colosimo v. Roman Catholic Bishop of Salt Lake City* for the proposition that such "inquiry notice" is sufficient to trigger the statute of limitations. 156 P.3d 806 (Utah 2007). Because the Court is applying an Idaho statute of limitations, Idaho law controls. In *McCoy*, the Idaho Supreme Court expressly rejected the rule proposed by the Church Defendants. 820 P.2d at 368.

documentation of such abuse in the form of the IV files. *See Def.'s Br.* at 15, Dkt 183-1.

Again, such evidence may have been sufficient to support an inference that such abuse

was occurring when the Church Defendants made the alleged misrepresentations that

underlie Doe XII's constructive fraud claim. But inference and suspicion are not

sufficient to trigger the statute of limitations. *McCoy*, 820 P.2d at 368. The Church

Defendants point to no direct evidence of such abuse that was readily discoverable by

Doe XII in 2010. Rather, Doe XII argues that such evidence did not become publicly

available until the Los Angeles Times published portions of the IV files in September

2012. *Pl.'s Br.* at 17, Dkt. 203. Even then, mere publication of such facts may not be

sufficient to infer discovery where, as here, Doe XII alleged a relationship of trust and

confidence between himself and the Church Defendants. *See Gerlach v. Schultz*, 244 P.2d

1095, 1099 (Idaho 1952) ("when the relationship of trust and confidence exists . . .

making it the duty of the defrauder in his trust capacity to disclose the true state of facts,

the defrauded party is not charged with constructive discover[y] of the fraud on account

of the facts being made a matter of public record."). Thus, a jury could reasonably find

that, absent access to documentation of prior abuse in scouting, Doe XII would not,

through the exercise of reasonable diligence, have discovered the necessary facts

supporting his constructive fraud claim before February 2011.[4]

---

[4] The Church Defendants further argue that when Doe XII first obtained the IV files is irrelevant
because the IV files, created and maintained by the Boy Scouts, do not bear on what the Church knew
(Continued)

Finally, the Church Defendants argue that counsel for Doe XII knew the facts underlying his constructive fraud claim as early as July 2009, and that their knowledge can be imputed to Doe XII. *Def.'s Br.* at 15, Dkt 183-1. Although Doe XII was represented by Chasan & Walton in 2007, the relationship terminated in August 2007 and he did not retain them in the instant matter until October 2013. *See Chasan Decl.* ¶ 2, Dkt. 203-2; *Doe XII Decl.* ¶ 5, Dkt. 203-5. The Church Defendants do not allege that Chasan & Walton knew or had notice of facts supporting Doe XII's claim when they represented him in 2007, and the Court declines to impute knowledge or notice of facts obtained by Chasan & Walton to Doe XII in 2009, when Doe XII was not represented by them at that time. *See In re Perle*, 725 F.3d 1023 (9th Cir. 2007) (declining to impute an attorney's knowledge to a client whose representation had terminated).

Because a reasonable jury could hold that Doe XII could not obtain evidence of the alleged falsity of the Church Defendants' statements before February 2011, the Court denies summary judgment on the grounds that there is a question of fact as to whether the statute of limitations bars Doe XII's claim.

---

about abuse in Scouting. The Church Defendants' knowledge of the abuse as documented by the IV files is not relevant because the Defendants' knowledge of the alleged falsity of their statements is not an element of Doe XII's constructive fraud claim. Instead, the timing of Doe XII's access to the IV files is relevant inasmuch as the IV files provided him with evidence of the alleged falsity of the Church Defendants' representations about the safety of Scouting.

## 5. Motions to Seal

### A. *Legal Standard*

"[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Parties must "overcome[] this strong presumption" of public access when seeking to maintain the confidentiality of judicial files and records. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). A party seeking to seal documents attached to a dispositive motion has the burden of demonstrating "compelling reasons" for protection that outweigh the public interest. *Id*. at 1178–79. Compelling reasons may exist where "a court record might be used to gratify private spite or promote public scandal, to circulate libelous statements, or as sources of business information that might harm a litigant's competitive standing." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (internal citations omitted). But, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179.

Because judicial records are public documents, a showing of good cause to seal a document under Rule 26(c) is not sufficient to fulfill the "compelling reasons" standard and preclude production. *Id.* at 1180. Rather, the party is "required to present articulable facts identifying the interests favoring continued secrecy . . . and to show that these

specific interests overcame the presumption of access by outweighing the public interest in understanding the judicial process." *Id.* at 1181 (internal citation omitted).

**B.** *Analysis*

The parties ask the Court to seal the entire record of the Church Defendants' Motion for Summary Judgment on the basis that the Settlement Agreement and Release at the heart of the Church Defendants' motion is "confidential."[5] The Church Defendants fail to articulate any standard by which the Court should grant their Motion to Seal. *Def.'s Motion to Seal*, Dkt. 182. Doe XII simply asserts that the confidentiality of the Settlement Agreement demonstrates "good cause" for sealing the record on this motion. *Pl.'s Motion to Seal*, Dkt. 202. Good cause is not sufficient to support sealing the record on a motion for summary judgment. *Kamakana*, 447 F.3d at 1181.

The Court acknowledges that the Settlement Agreement contains a confidentiality clause. *See Woodard Decl.* Ex. G ¶ 4, Dkt 183-9. For the purposes of deciding the instant motion, the Court will assume that this clause represents the intent of the parties that the Agreement remain confidential. But, "[s]imply mentioning a general category of privilege, without any further elaboration," is not sufficient to demonstrate a "compelling reason." *Kamakana*, 447 F.3d at 1184. The parties fail to articulate how maintaining the

---

[5] The Church Defendants move to seal their Motion for Summary Judgment (Dkt. 183) and their Memorandum in Support (Dkt. 183-1), in addition to the Declaration of Wade Woodard and the accompanying exhibits (Dkts. 183-2 to 183-10). *Def's Motion to Seal*, Dkt. 182. The Church Defendants also filed their Reply (Dkt. 209) under seal. Doe XII moves to seal his Response (Dkt. 203), as well as the accompanying exhibits. *Pl's Motion to Seal*, Dkt 202.

confidentiality of the Agreement supports a specific interest that outweighs the public

interest in understanding the judicial process, particularly where the Agreement provides

the basis or explanation for the Court's decision on this matter. *See Oliner v.

Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (explaining the principles underlying

the common law right of public access to court records).

The presumption of access is particularly strong where, as here, the parties

intentionally introduced the Agreement into the record of the case, and asked the Court to

interpret its terms. *See Herrnreiter v. Chicago Housing Auth.*, 281 F.3d 634, 636 (7th Cir.

2002) ("A settlement agreement is a contract, and when parties to a contract ask a court

to interpret and enforce their agreement, the contract enters the record of the case and

thus becomes available to the public, unless it contains information such as trade secrets

that may legitimately be kept confidential."). Just as the Agreement forms the basis for a

substantial part of the Church Defendants' Motion for Summary Judgment and Doe XII's

Response, so too does it necessarily form the basis of a large portion of the Court's

decision. Sealing the entire record on this motion would substantially impede "the

public's understanding of the judicial process and of significant public events," which is

"at the heart of the interest in insuring public access." *Kamakana*, 447 F.3d at 1179.

The Court has not identified any interest that outweighs the strong presumption of

public access. After reviewing the Agreement, the Court finds no evidence that it might

be used "to gratify private spite or promote public scandal, to circulate libelous

statements, or as sources of business information that might harm a litigant's competitive

standing." *Ctr. for Auto Safety*, 809 F.3d at 1097 (internal citations omitted). The

Agreement does contain identifying information about Doe XII, however, including his

name and signature. *Woodard Decl.* Ex. G at 2, 4,  Dkt. 183-9. The Court finds Doe XII's

interest in maintaining his anonymity to be compelling, on the grounds that doing so will

protect him, as a victim of child sexual abuse, from unnecessary mental and emotional

harm. *See Doe v. Advanced Textile Corp.*, 214 F.3d 1058, 1098 (9th Cir. 2000) ("a party

may preserve his or her anonymity in judicial proceedings in special circumstances. . .

."). However, the Court finds redaction of Doe XII's personal information sufficient to

protect his interest in privacy.

 The only interests the Court has identified in support of sealing the record on this

motion are the parties' interest in obtaining the benefit of their bargain, and the public

interest in promoting settlement. *See Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D.Nev.

1993) (finding a public and private interests in settlement and the contractual rights of the

parties to a settlement agreement). These interests are not sufficient to establish a

compelling reason to seal the record in this case.

 In *Kalinauskas*, the defendant sought to preclude a woman from sitting for a

deposition regarding a prior claim for sexual harassment against the defendant, where she

had signed a confidentiality agreement when she settled the claim. *Id.* The court found

the public interest in protecting settlement agreements and the private interests in the

parties in their bargain were insufficient to show good cause to issue a protective order

preventing her deposition. *Id.* Similarly, courts have declined to seal court-approved

settlement agreements merely because they contain confidentiality agreements, even where those agreements are integral to the parties' agreement to a negotiated settlement. *See, e.g.*, *M.P. ex rel. Provins v. Lowe's Companies, Inc.*, 2:11-cv-01985-GEB-CKD, 2012 WL 1574801, at *2 (E.D. Cal. May 3, 2012) (declining to seal a settlement agreement conditioned on confidentiality); *Taylor v. AFS Technologies, Inc.*, 09-cv-2567-PHX-DGC, 2010 WL 2079250, at *2 (D.Ariz. May 24, 2010) (requiring a settlement agreement to be made part of the public record of the case before it could be approved, despite the agreement containing a confidentiality provision). Thus, the Court finds that the parties' interest in bargained-for confidentiality, and the public interest in promoting settlement are not sufficiently compelling to overcome the strong presumption of public access to documents which form the basis of this Court's decision on summary judgment.

Doe XII separately articulated specific reasons for sealing two of the Exhibits to his Response. First, Doe XII asks that the Court seal Exhibit C to the Dumas Declaration, Dkt. 203-3, because it was produced by the Boy Scout Defendants subject to the protective order in this case, and thus was required to be filed under seal pursuant to Local Rule 5.3. Even where an attachment to a dispositive motion was previously filed under a protective order, however, the Court must determine whether a compelling reason exists, which justifies sealing the record. *Kamakana*, 447 F.3d at 1179. No such reason was articulated in Doe XII's Motion, thus the Court will order Exhibit C unsealed after twenty days.

Second, Doe XII asks the Court to seal his Declaration, Dkt. 203-5, because it uses his true name and he has chosen to file his case under a pseudonym. The Court has already found Doe XII's interest in maintaining his anonymity to be compelling. Having reviewed the Doe XII Declaration, however, the Court finds that redaction of Doe XII's personal information is sufficient to protect his anonymity. Thus, the Court will grant Doe XII's motion to the extent that he may file a redacted version of his Declaration.

### C.    *Redaction*

To the extent not already addressed above, the Court finds that there is a compelling reason to protect the legitimate privacy interests of Doe XII and other child victims who may be identified in the parties' pleadings on summary judgment and in the documents attached as exhibits thereto. As such, the names and identifying information of any alleged child victim, and of the parents of any child victim, not already made public in the Complaint or other unsealed pleadings in this case, shall remain sealed. The parties shall file redacted copies of their pleadings and exhibits within twenty days.

Accordingly,

NOW THEREFORE IT IS HEREBY ORDERED that the Church Defendants' Motion for Summary Judgment Against Doe XII (Dkt. 183) is DENIED.

IT IS FURTHER ORDERED that the Church Defendants' Motion to Seal (Dkt. 182) is GRANTED IN PART and DENIED IN PART. The Church Defendants shall file redacted copies of their briefing and exhibits in support of their Motion for Summary Judgment Against Doe XII within twenty days.

IT IS FURTHER ORDERED that Doe XII's Motion to Seal (Dkt. 202) is GRANTED IN PART and DENIED IN PART. Doe XII shall file redacted copies of their briefing and exhibits in Response to the Church Defendants' Motion for Summary Judgment within twenty days.

IT IS FURTHER ORDERED that should any party to the litigation wish to file a Motion to Reconsider the Court's order unsealing the record on the Church Defendants' Motion for Summary Judgment, or a Motion to Seal specific records filed in support of that motion, they shall do so within ten days. Briefs in support shall be limited to ten pages, and shall address any proposed modifications to the Court's order, including modifications to the redactions ordered by the Court.

IT IS FURTHER ORDERED that this order be filed under seal and remain under seal for twenty days, after which the Court will order that it be unsealed.

DATED: November 20, 2017

B. Lynn Winmill
Chief Judge
United States District Court