UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOES I-XIX, and JOHN ELLIOTT,<br><br>    Plaintiffs,<br><br>    v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to do business in Idaho,<br><br>    Defendants. | Case No. 1:13-cv-00275-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it motions filed by the Boy Scouts of America (BSA) and the LDS Church to exclude the testimony of plaintiffs' expert William Dworin. The motions are fully briefed and at issue. The Court will deny the motions in large part but grant a portion of each motion, as explained in more detail below.

## ANALYSIS

Dworin was retained by plaintiffs to testify about "the voluminous evidence of what the [BSA] and LDS Church knew and when about child molesters . . . ." *See*

**Memorandum Decision & Order – page 1**

*Dworin Report (Dkt. No. 305-3)* at ¶ 10.  He has undisputed expertise in the investigation of sexual crimes against children, having worked for many years in this field with the Los Angeles Police Department.  Specifically, he developed an expertise in profiling sexual predators, and developing methods of predator identification and protection.  The issue in this case is whether his expected testimony strays outside his area of expertise.

Dworin filed two expert reports.  In the first, he (1) describes the 1,350 publicly available ineligible volunteer files ("IV Files") generated and maintained by BSA; (2) renders an opinion based on his review of these files that the "BSA was aware years before 1963 that sexual predators would seek out positions with the Boy Scouts to get close to and target boys for abuse"; (3) describes how individuals become adult scout leaders in the BSA and LDS Church; (4) renders an opinion that the BSA and LDS Church represented to their members that scouting was a "safe and wholesome organization"; and (5) renders an opinion that these representations were false because the BSA and LDS Church knew there were sexual predators in adult leadership positions but did nothing to warn about them.  Dworin's second report is a rebuttal report addressing the expert reports submitted by the BSA and LDS Church.

## BSA's Motion to Exclude

The BSA complains that Dworin has no expertise that would allow him to testify about what the BSA knew – and when it knew – that there were sexual predators within its adult leadership.  In rendering opinions on these subjects, Dworin relies entirely on his experience.  "Experience alone – or experience in conjunction with knowledge, skill, training or education" can provide a sufficient foundation for expert testimony.  *See*

**Memorandum Decision & Order – page 2**

*Federal Rule of Evidence 701, Adv. Comm. Notes.* "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* Nevertheless, experts like Dworin, who rely "solely or primarily on experience," must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See Rule 702 Adv. Comm. Notes 2000 Amendments* ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it")

    Dworin meets this standard. He explains that his opinions on what the defendants knew – and when they knew it – are based on his review of 1,350 IV Files and his involvement as an expert in 9 other similar civil cases against the BSA. This experience and study, on its face, would appear to give Dworin a reliable basis to render an opinion on what the BSA knew, and when they knew, about sexual predators in their adult leadership ranks. Moreover, Dworin's opinions are based on known factors – the IV Files, and the BSA's structure and public representations – that, if inaccurate, are easily refutable by defendants. As the Advisory Committee Notes explain, "the rejection of expert testimony [after Daubert] is the exception rather than the rule." *See Federal Rule of Evidence 702 Adv. Comm. Notes.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow,* 509 U.S. 579, 595 (1993).

    The BSA challenges the relevance of Dworin's testimony, arguing that the BSA's knowledge of predators is not an element of constructive fraud. But the Court resolved

**Memorandum Decision & Order – page 3**

this issue in *Tom Doe v. Presiding Bishop*, 2012 WL 3782454 at *20 (D. Idaho Aug. 31, 2012). There, the Court held that a special relationship of trust and confidence was an element of constructive fraud, and that a plaintiffs' youth and the BSA's superior knowledge of the dangers are both factors that support the existence of a special relationship. The relevance objection is not persuasive.

For these reasons, the Court will deny the BSA's motion to the extent it seeks to exclude Dworin's testimony relying on the IV Files and his 9 years of involvement as an expert in similar cases to render an opinion on what the BSA knew, and when they knew it, about sexual predators in its adult leadership ranks. The same analysis applies to his testimony about the BSA's public representations and their falsity. Again, those opinions would have a reliable basis in his experience and study discussed above.

However, there are other aspects of Dworin's testimony that are excludable. For example, he plans to testify that (1) There were thousands of boy scout victims; (2) the boys who joined scouting and their parents believed and relied upon the false statements that scouting was safe and wholesome; (3) the BSA was negligent; and (4) that IV files contain information that would assist the BSA in profiling the activities of a pedophile, thereby allowing the BSA to protect the boys from predators.

The first two items on this list are mere speculation and will be excluded. The third item – that the BSA was negligent – was something Dworin testified to in his deposition but that plaintiffs' counsel immediately disavowed, pointing out accurately that there is no negligence claim in this case. Given that, it appears Dworin will not so testify but the Court will exclude the testimony just to be sure. With regard to the fourth

**Memorandum Decision & Order – page 4**

item, Dworin's testimony that the IV files contain information helpful to creating a profile of a sexual predator would be directly within his area of expertise. However, the relevance of such testimony is not immediately clear. The Court will exclude the testimony without prejudice to the right of plaintiffs to raise this issue again during trial when that relevance might become clearer.

**LDS Church Motion to Exclude**

The LDS Church moves to exclude Dworin's testimony on many of the same grounds, and the same analysis largely applies, although some extra analysis is necessary. The IV Files were kept by the BSA, not the LDS Church. Dworin testified in his deposition that he did not know if the BSA had ever shared the IV Files with the LDS Church. *See Dworin Deposition (Dkt. No. 305-6)* at p. 97. So, unlike his opinion on what the BSA knew, Dworin is not relying on knowledge of the IV Files to establish the knowledge of the LDS Church. Instead, Dworin is relying on other evidence, as he set forth in his Rebuttal Report: "[T]he LDS Church received actual and specific complaints on both Larren Arnold and James Schmidt prior to the abuse of Doe I, Doe II, Doe V, and Doe XII." *See Rebuttal Report (Dkt. No. 305-7).* It is this evidence on which Dworin bases his opinion that the LDS Church knew that there were sexual predators in its adult ranks. In that same Rebuttal Report, Dworin describes how the LDS Church is organized in relation to scouting and that "every boy and his parents knew to a certainty that the scout master could be trusted." *Id.* at p. 6.

With regard to Dworin's testimony about what the LDS Church knew – and when it knew – about sexual predators in adult leadership positions, the material Dworin relies

**Memorandum Decision & Order – page 5**

upon is much narrower that what he relied upon in rendering his opinion about the BSA's knowledge. Given his deposition testimony, Dworin could not testify that the LDS Church was aware of the IV Files and had a broad knowledge of sexual predators within adult leadership positions that those IV Files might convey. But Dworin is on more solid ground when he limits his testimony to rely only on Arnold and Schmidt to render an opinion that the LDS Church knew of sexual predators in its adult leadership positions – after all, Arnold and Schmidt are two of the predators that allegedly molested plaintiffs. Accordingly, so long as Dworin's testimony about the knowledge of the LDS Church is limited to its knowledge of Arnold and Schmidt, the Court will not exclude it.

With regard to Dworin's testimony about the Church's organization and its relationship to scouting, the LDS Church argues that Dworin has no expertise in these areas. That is true, but when he is describing the organizational structure of the LDS Church – and its organization relationship to scouting – he is providing a necessary context for his opinions, and not a separate opinion on the LDS Church, so no expertise is necessary. Even if this strictly organization structure testimony is otherwise inadmissible under Rule 705 because Dworin cannot show that it is "facts or data" that experts in his field would "reasonably rely on", the organizational testimony is nevertheless admissible under the prong of Rule 705 that allows such testimony if its "probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect." Here, testimony about the structure of the LDS Church and its organizational relationship to scouting has a probative value in helping the jury understand Dworin's opinions about the LDS Church's knowledge or sexual predators that substantially outweighs any

**Memorandum Decision & Order – page 6**

prejudicial effect. Moreover, the Court notes that the LDS Church does not allege here that Dworin's organizational understanding is incorrect in any way.

But Dworin does stray outside his expertise when he testifies about how members of the LDS Church felt about scouting. For example, Dworin renders an opinion that "every boy and his parents knew to a certainty that the scout master could be trusted." *See Rebuttal Report, supra,* at p. 6. That is speculation and must be excluded. To put some boundaries on Dworin's testimony here, the Court will allow Dworin to testify that the LDS Church advised it members that scouting was the official program for boys within the LDS Church, but will exclude any testimony speculating about how the boys and parents felt about scouting, trusted the scoutmaster, or felt compelled to join a troop.

In all other respects, the Court's analysis of the BSA's motion applies with equal strength to the LDS Church's motion.

## **Conclusion**

The BSA's motion to exclude will be denied in large part except that it will be granted to exclude Dworin's testimony that (1) there were thousands of boy scout victims; (2) the boys who joined scouting and their parents believed and relied upon the false statements that scouting was safe and wholesome; (3) the BSA was negligent; and (4) the IV files contain information that would assist the BSA in profiling the activities of a pedophile, thereby allowing the BSA to protect the boys from predators.

The LDS Church's motion to exclude will be denied in large part except that it will be granted to exclude Dworin's testimony (1) that "every boy and his parents knew to a certainty that the scout master could be trusted;" (2) speculating about how the boys

**Memorandum Decision & Order – page 7**

and parents felt about scouting, trusted the scoutmaster, or felt compelled to join a troop; and (3) excluding the same evidence excluded pursuant to the BSA's motion to exclude.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the BSA's motion to exclude testimony of Dworin (docket no. 317) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to exclude Dworin's testimony that (1) there were thousands of boy scout victims; (2) the boys who joined scouting and their parents believed and relied upon the false statements that scouting was safe and wholesome; (3) the BSA was negligent; and (4) the IV files contain information that would assist the BSA in profiling the activities of a pedophile, thereby allowing the BSA to protect the boys from predators. It is denied in all other respects.

IT IS FURTHER ORDERED, that the LDS Church's motion to exclude testimony of Dworin (docket no. 305) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to exclude Dworin's testimony (1) that "every boy and his parents knew to a certainty that the scout master could be trusted;" (2) speculating about how the boys and parents felt about scouting, trusted the scoutmaster, or felt compelled to join a troop; and (3) excluding the same evidence excluded pursuant to the BSA's motion to exclude. It is denied in all other respects.



DATED: December 3, 2018

B. Lynn Winmill
Chief U.S. District Court Judge

**Memorandum Decision & Order – page 9**