UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOES I-XIX, and JOHN ELLIOTT,<br><br>    Plaintiffs,<br><br>    v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to do business in Idaho,<br><br>    Defendants. | Case No. 1:13-cv-00275-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

The Court has before it motions to exclude the testimony of plaintiffs' expert witness Gary Schoener. The motions are fully briefed and at issue. The Court recently issued an opinion on similar motions to exclude testimony of another expert for plaintiffs, William Dworin, and the analysis there applies with equal strength here. *See Memorandum Decision and Order (Dkt. No. 347).* For the reasons expressed below, the Court will grant the motions in part and deny them in part.

**Memorandum Decision & Order – page 1**

# BACKGROUND

Schoener is a licensed psychologist who is expected to testify to the following points: (1) The BSA and LDS Church knew – before plaintiffs were abused – that there were sexual predators in their adult leadership positions; (2) With this knowledge, the BSA and LDS Church had a duty to give warnings, institute protective programs, and open investigations but failed to do so; (3) Instead, the BSA and LDS Church falsely represented that scouting was safe and the adult leaders trustworthy; (4) Parents and boys placed trust and confidence in these representations of the BSA and the LDS Church; and (5) The LDS Church as an organization has "inherent credibility" that constituted an "implied representation" that any program it promoted – like scouting – was safe.

Schoener has been a licensed psychologist in Minnesota since 1974. He has a B.A. in Psychology from Cornell University, and is a Ph.D. candidate in Clinical Psychology at the University of Minnesota. He practices as a clinical psychologist, specializing in counseling patients sexually abused by counselors and psychotherapists, including minor patients, and the sexual abuse of children. For the last 45 years, he has "provided consultation to individuals, families, local institutions, and regional and national organizations concerning many issues related to prevention and intervention in cass of sexual abuse by persons in positions of trust." *See Report (Dkt. No. 305-8)* at p. 4. He has worked as a consultant with organizations, specifically youth-serving organizations, since the late 1970s, providing advice and training for sexual abuse prevention policies, training, and responding to complaints. *Id.* at pp. 4-5. He has been an expert for plaintiffs and defendants in at least 40 civil child sexual abuse cases, to

**Memorandum Decision & Order – page 2**

testify about issues related to child sexual abuse in the setting of institutions of trust, such as churches, the Boy Scouts, Girl Scouts, Big Brothers Big Sisters, other volunteer programs, public and religious-based schools, and treatment centers.

ANALYSIS

**The BSA's Motion to Exclude**

The BSA challenges Schoener's expected testimony on negligence issues. For example, he will testify that the BSA had a duty to investigate incidents of abuse, to warn parents and boys that sexual predators might be in adult leadership positions, to notify parents and boys of adult leaders put on "probation" by the BSA, and to institute programs that would protect boys and remove predators. The BSA failed to take any of these actions, he will testify.

As the BSA accurately points out, this testimony all relates to a negligence case, not a constructive fraud case. These are opinions about what the BSA *should have done,* and hence are not pertinent to a constructive fraud case that looks at what the BSA *actually did* – that is, a constructive fraud case examines whether a relationship of trust and confidence was created by false statements to these plaintiffs, not whether protective actions were required by some standard of care. Consequently, the Court will exclude all testimony from Schoener that the BSA had a duty to investigate incidents of abuse, to warn parents and boys that sexual predators might be in adult leadership positions, to notify parents and boys of adult leaders put on "probation" by the BSA, and to institute programs that would protect boys and remove predators.

The BSA seeks to exclude Schoener's testimony that the BSA knew about abusers and that it falsely represented that scouting was safe. More specifically, Schoener will testify that based on his review of the IV Files, the BSA knew "that scouting posed an identifiable hazard that scout leaders and volunteer participants have and may sexually abuse scouts through their access to youth free of parental supervision." *See Report, supra,* at p. 3. He will also testify that the BSA represented to parents and their boys that scouting was safe and that its leaders were trustworthy, all of which was false given the BSA's knowledge of the IV Files. *Id.*

This testimony – unlike the testimony discussed above – relates directly to plaintiffs' constructive fraud case. These are not opinions about what the BSA *should have done* but are instead opinions that the BSA knew certain facts and made statements to parents and boys that, based on that knowledge, were false. These opinions are directly relevant to elements of a constructive fraud case. The opinions are also within Schoener's expertise. He is a licensed psychologist who has spent decades working with organizations like the BSA on child abuse issues. His expertise would allow him to render opinions on what an organization knew and whether, given that knowledge, its representations were false.

But Schoener strays outside his field of expertise when he testifies that parents and boys had a relationship of trust and confidence with the BSA and relied upon these false representations. Schoener is merely speculating here, and this testimony must come from the boys and their parents. The Court will exclude any testimony from Schoener that

**Memorandum Decision & Order – page 4**

parents and boys had a relationship of trust and confidence with the BSA and relied upon these false representations.

**The LDS's Church's Motion to Exclude**

The LDS Church moves to exclude Schoener's testimony on many of the same grounds, and the same analysis largely applies, although some extra analysis is necessary, as was the case in the *Dworin* decision. The IV Files were kept by the BSA, not the LDS Church. Schoener testified that the BSA concealed the IV Files from the LDS Church. *See Schoener Deposition (Dkt. No. 305-15)* at pp. 98-99. Thus, Schoener is not relying on knowledge of the IV Files to establish the knowledge of the LDS Church, but instead will testify that the LDS Church "had specific notice that [abusers] Schmidt and Arnold presented the danger of child molestation to the scouts." *See Report, supra* at p. 22.

Thus, like Dworin, the material that Schoener relies upon to establish the knowledge of the LDS Church is much narrower then what he relied upon in rendering his opinion about the BSA's knowledge. Given his deposition testimony, Schoener could not testify that the LDS Church was aware of the IV Files and had a broad knowledge of sexual predators within adult leadership positions that those IV Files might convey. But Schoener is on more solid ground when he limits his testimony to rely only on Arnold and Schmidt to render an opinion that the LDS Church knew of sexual predators in its adult leadership positions – after all, Arnold and Schmidt are two of the predators that allegedly molested plaintiffs. Accordingly, so long as Schoener's testimony about the knowledge of the LDS Church is limited to its knowledge of Arnold and Schmidt, the Court will not exclude it.

**Memorandum Decision & Order – page 5**

For the same reasons, the Court will not exclude Schoener's testimony that the LDS Church, having this knowledge, made false representations to parents and boys that scouting was safe and that adult leaders were trustworthy. Again, this testimony is within Schoener's area of expertise and is relevant to the elements of constructive fraud.

But Schoener goes outside the area of his expertise when he testifies that (1) the LDS Church has an "inherent credibility" with parents and boys, creating an implicit promise that any program it promotes – like scouting – is safe; and (2) the LDS Church created trust and confidence with parents and boys who relied upon the Church's representations. Schoener is speculating here, and this testimony will be excluded.

With regard to Schoener's testimony that the LDS Church had various duties that it failed to fulfil, the analysis is the same as applied to the BSA above – this testimony must be excluded. Consequently, the Court will exclude all testimony from Schoener that the LDS Church had a duty to investigate incidents of abuse, to warn parents and boys that sexual predators might be in adult leadership positions, to notify parents and boys of adult leaders put on "probation" by the BSA, and to institute programs that would protect boys and remove predators.

## Conclusion

The BSA's motion to exclude will be denied in large part except that it will be granted to exclude Schoener's testimony that (1) the BSA had a duty to investigate incidents of abuse, to warn parents and boys that sexual predators might be in adult leadership positions, to notify parents and boys of adult leaders put on "probation" by the BSA, and to institute programs that would protect boys and remove predators; and (2) the

**Memorandum Decision & Order – page 6**

boys who joined scouting and their parents believed and relied upon the BSA's statements that scouting was safe and wholesome.

The LDS Church's motion to exclude will be denied in large part except that it will be granted to exclude Schoener's testimony that (1) the LDS Church had a duty to investigate incidents of abuse, to warn parents and boys that sexual predators might be in adult leadership positions, to notify parents and boys of adult leaders put on "probation" by the BSA, and to institute programs that would protect boys and remove predators. (2) the LDS Church has an "inherent credibility" with parents and boys, creating an implicit promise that any program it promotes – like scouting – is safe; and (3) the LDS Church created trust and confidence with parents and boys who relied upon the Church's representations.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the BSA's motion to exclude testimony of Schoener (docket no. 316) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to exclude Schoener's testimony that (1) the BSA had a duty to investigate incidents of abuse, to warn parents and boys that sexual predators might be in adult leadership positions, to notify parents and boys of adult leaders put on "probation" by the BSA, and to institute programs that would protect boys and remove predators; and (2) the boys who joined scouting and their parents believed and relied upon the BSA's statements that scouting was safe and its adult leaders trustworthy. It is denied in all other respects.

**Memorandum Decision & Order – page 7**

IT IS FURTHER ORDERED, that the LDS Church's motion to exclude testimony of Schoener (docket no. 306) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to exclude Schoener's testimony that (1) the LDS Church had a duty to investigate incidents of abuse, to warn parents and boys that sexual predators might be in adult leadership positions, to notify parents and boys of adult leaders put on "probation" by the BSA, and to institute programs that would protect boys and remove predators; (2) the LDS Church has an "inherent credibility" with parents and boys, creating an implicit promise that any program it promotes – like scouting – is safe; and (3) the LDS Church created trust and confidence with parents and boys who relied upon the Church's representations. It is denied in all other respects.

DATED: December 4, 2018

B. Lynn Winmill
Chief U.S. District Court Judge