IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOES I-XIX and JOHN ELLIOTT,<br><br>Plaintiffs,<br><br>v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to do business in Idaho,<br><br>Defendants. | Case No. 1:13-cv-00275-BLW<br><br>**MEMORANDUM DECISION & ORDER** |

## INTRODUCTION

The Court has before it plaintiffs' motion to add a claim for punitive damages, and defendants' motion to exclude evidence of negligence and fraud. The Court heard oral argument on the motion to add a punitive damage claim on March 22, 2019, and both motions are now fully briefed and at issue. For the reasons explained below, the Court will (1) grant the motion to add a punitive damage claim as to defendant Boy Scouts of America (BSA) but reserve ruling as to the defendant LDS Church; and (2) grant in part and deny in part the motion to exclude evidence of negligence and fraud.

**MOTION TO ADD A PUNITIVE DAMAGE CLAIM**

Memorandum Decision & Order – page 1

**Legal Standards – Punitive Damages**

Idaho law states that "[t]he court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *See* I.C. § 6-1604(2). At trial, plaintiffs "must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted. *See* I.C. § 6-1604(1). The Idaho courts have put a gloss on the statutory definition, requiring that plaintiffs must establish by clear and convincing evidence, "an intersection of two factors: a bad act and a bad state of mind." *Hall v. Farmers Alliance Mut. Ins. Co.*, 179 P.3d 276, 282 (Id.Sup.Ct. 2008). Specifically, a plaintiff must prove that (1) the defendant acted in a manner that is an "extreme deviation from reasonable standards of conduct" with an understanding of – or disregard for – its likely consequences; and (2) that defendant acted with an "extremely harmful state of mind," described by statute as "oppressive, fraudulent, malicious, or outrageous." *Kuhn v. Coldwell Banker Landmark, Inc.*, 245 P.3d 992, 1006 (Id.Sup.Ct. 2010). Punitive damages are not allowed for gross negligence, deliberate, or willful conduct. *Cummings v. Stephens,* 336 P.3d 281, 296 at n. 5 (Id.Sup.Ct. 2014).

The Idaho courts have identified five factors to consider in determining whether a defendant's conduct is an extreme deviation from reasonable standards of conduct: (1) Did defendants' unreasonable conduct actually caused harm to the Plaintiffs? (2) Have plaintiffs presented expert testimony? (3) Is there a special relationship of trust and

**Memorandum Decision & Order – page** 2

confidence between the parties? (4) Is there evidence of a continuing course of oppressive conduct? and (5) Have plaintiffs offered proof of defendants' knowledge of the likely consequences of their conduct. *Thurston Enterprises, Inc. v. Safeguard Business Systems, Inc.*, 2019 WL 667966 at *12 – 13. (Id.Sup.Ct. 2019).

**Analysis of Motion to Add Punitive Damages as to BSA**

The Court, in its earlier decision denying summary judgment, discussed at length the IV files, and the notice they provided to the BSA about sexual predators in their adult leadership ranks. *See Memorandum Decision (Dkt. No. 336)* at pp. 10-12. Plaintiffs' expert Bill Dworin reviewed 1,350 IV files and concluded that "BSA was aware years before 1963 that sexual predators would seek out positions with the Boy Scouts to get close to and target boys for abuse." *See Memorandum Decision (Dkt. No. 347)* at p. 2. Based on this, he concludes that BSA falsely represented to its members that scouting was a "safe and wholesome organization." *Id.* Plaintiffs' other expert, Gary Schoener, comes to the same conclusions. *See Memorandum Decision (Dkt. No. 349).* One example is Schoener's opinion that based on his review of the IV Files, BSA knew "that scouting posed an identifiable hazard that scout leaders and volunteer participants have and may sexually abuse scouts through their access to youth free of parental supervision." *Id.* At p. 4. He will also testify that the BSA represented to parents and their boys that scouting was safe and that its leaders were trustworthy, all of which was false given the BSA's knowledge of the IV Files. *Id.*

The defendants attempted to exclude this expert testimony, but the Court denied those motions in large part, excluding only a portion of each expert's testimony (and

**Memorandum Decision & Order – page 3**

excluding none of the testimony discussed above). This expert testimony covers several of the *Thurston* factors and weighs in favor of a finding that it is "reasonably likely" that plaintiffs can satisfy the clear and convincing standard required at trial.

Another *Thurston* factor examines whether there was a special relationship of trust and confidence between the parties. The Court has previously held that there is "sufficient evidence in the record from which a jury could reasonably find that BSA occupied a superior position of influence and authority over plaintiffs Doe IV, Doe XVIII, and Doe XII, and [that], in turn, those plaintiffs reposed trust and confidence in BSA." *See Memorandum Decision (Dkt. No. 336)* at p. 30. This *Thurston* factor also weighs in favor of allowing a punitive damage claim.

There is also evidence in the IV files that BSA was covering up the extent of the predator abuse problem. As just one example of others in the record, the IV file for Clyde Brock contains evidence from a Scout Executive that Brock was taking pictures of nude Scouts and having inappropriate relationships with at least two Scouts – yet the same Scout Executive then tells the local troop leader that "the less it is discussed among adults and boys I am sure the better it will be." *See Memorandum Decision (Dkt. No. 455)* at p. 3.

Moreover, there is no evidence that BSA ever shared any of the contents of the IV files with chartering organizations, parents, or the Scouts. Paul Ernst, the BSA Executive responsible for maintaining the IV files for many years, testified in 1988 that BSA "ha[d] never divulged the contents of our files to Boy Scouts or the public at any time." *See*

*Ersnt Deposition (Dkt. No. 384-1)* at p. 480.[1]  He further testified that, through 1985, BSA had never told Boy Scouts, parents, law enforcement, or local council Scout Executives the approximate number of Scout leaders who had been accused of sexually abusing Scouts.  *Id.* at pp. 480-81.

This record shows that plaintiffs have a reasonable likelihood of proving facts at trial, by clear and convincing evidence, sufficient to support an award of punitive damages against the BSA.  For that reason, plaintiffs' motion to add a claim for punitive damages against BSA is granted.

**Motion to Add Punitive Damages Against the LDS Church**

Because the Court has bifurcated trial in this matter, the Court will reserve ruling on the punitive damage motion as against the Church until a later date.

**Motion to Add Punitive Damages -- Conclusion**

In conclusion, the Court will grant in part and reserve in part the plaintiffs' motion to add claims for punitive damages.  The Court will grant the motion as against BSA but will reserve the motion as against the LDS Church.

## MOTION TO EXCLUDE EVIDENCE OF NEGLIGENCE & FRAUD

**Analysis – Motion to Exclude Evidence of Negligence & Fraud**

---

[1] BSA filed a separate motion to strike certain evidence from being considered in resolving plaintiffs' motion for punitive damages, including Ernst's deposition excerpts cited above.  Ernst was the BSA's Director of Registration and Statistical Services for many years during the relevant time periods at issue in this case.  His deposition excerpts are his testimony from an earlier case filed against BSA, and is not hearsay under Rule 801(d)(2).  Indeed, BSA produced this deposition in its entirety in discovery in this case.  The Court can find no reason to strike it here.  The Court did not use any of the other exhibits that BSA seeks to strike, and so their motion will be denied.

Defendants seek to exclude any evidence, or arguments made by plaintiffs, relevant to issues of negligence or fraud, neither of which are at issue in this case. The plaintiffs agree with some of the items on defendants' exclusion list, and the Court will grant defendants' motions to the extent they seek exclusion of the following items agreed to by plaintiffs:

1. That the defendants had a duty to protect.
2. That defendants' policies and procedures for the protection of scouts were inadequate or ineffective.
3. That defendants should have implemented programs and what programs defendants should have implemented;
4. That the defendants should have investigated known and alleged pedophiles and instituted a remedy;
5. That the defendants should have reported known and alleged perpetrators to law enforcement or other organizations;
6. That known and alleged pedophiles should not have been with scouts unsupervised;
7. That the defendants had a duty to "err on the side of protecting children;"
8. That offenders were not prevented from having access to scouts;
9. That the defendants had a duty to prevent the alleged abuse;
10. That there was a failure to investigate;
11. That the defendants should have "ensured" that known and alleged pedophiles were not involved in "any youth program anywhere;"

Defendants also seek to exclude any evidence of their knowledge of the falsity of their statements of safety, and any evidence of a cover-up, but this evidence is relevant to the relationship of trust and confidence (as to both defendants) and punitive damages (as to BSA). *See Memorandum Decision (Dkt. No. 455)* at p. 5 (holding that "[e]vidence that BSA was covering up the sexual abuse is relevant to punitive damages . . . ."); *Memorandum Decision (Dkt. No. 347)* at pp.7-8 (holding that "plaintiffs' youth and BSA's superior knowledge of the dangers are both factors that support the existence of a special relationship"); *Tom Doe v Presiding Bishop,* 2012 WL 3782454

at *10 (D.Id. 2012) (holding that "the Church's alleged knowledge of [abuser] Arnold's dangerousness is a factor triggering a duty to disclose [based on a relationship of trust and confidence] simply by virtue of the information disparity").

The defendants argue that certain evidence that might be relevant to the applicability of the noneconomic damages cap of I.C. § 6-1603 should be excluded. The cap sets a limit on damages for personal injury unless the defendants' conduct is willful and reckless. Defendants argue that the cap applies and that the terms "willful and reckless" describe intentional acts that are irrelevant to a constructive fraud claim that ignores intent. However, this argument has been rendered moot by the introduction into the case of punitive damages as to BSA, which will make relevant evidence tending to show oppressive, fraudulent, malicious or outrageous conduct. *See* I.C. § 6-1604(1). This evidence contains a higher level of culpability than that required for the cap exclusion, so there is no need for the Court to determine now whether the cap applies – the Court can await the jury verdict to make that determination.

Defendants argue that plaintiffs must be prohibited from arguing that defendants had a duty to disclose dangers of abuse. Importantly, plaintiffs have agreed to exclude any evidence or argument that defendants had a duty to *protect* but argue that a duty to *disclose* dangers – or to *warn* – is different and arises from the relationship of trust and confidence, as the Court has held. *See Memorandum Decision (Dkt. No. 336)* at p. 34 (holding that "where the Court has found that a reasonable person could conclude that the requisite relationship [of trust and confidence] exists, the duty to warn may be inferred so long as a material danger existed"). Plaintiffs must be allowed to make

**Memorandum Decision & Order – page** 7

argument, and introduce evidence, related to a duty to disclose dangers – in essence a duty to warn – as part of their constructive fraud claim. This part of defendants' motion will be denied.

**Conclusion – Motion to Exclude Evidence of Negligence & Fraud**

In conclusion, the Court will grant defendants' motion in limine in part, excluding the list of agreed-upon items set forth above, and deny the motion in all other respects.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to add claims for punitive damages (docket no. 383) is GRANTED IN PART AND RESERVED IN PART. It is granted to the extent it seeks to add a claim for punitive damages against defendant BSA but is reserved to the extent it seeks to add a claim for punitive damages against defendant LDS Church.

IT IS FURTHER ORDERED, that BSA's motion to strike (docket no. 409) is DENIED.

IT IS FURTHER ORDERED, that the defendants' motions to exclude evidence of negligence and fraud (docket no. 358 & 373) are GRANTED IN PART AND DENIED IN PART. The motions are granted to the extent they seek to exclude evidence or argument of the following:

1. That the defendants had a duty to protect.
2. That defendants' policies and procedures for the protection of scouts were inadequate or ineffective.
3. That defendants should have implemented programs and what programs defendants should have implemented;

**Memorandum Decision & Order – page** 8

4. That the defendants should have investigated known and alleged pedophiles and instituted a remedy;
5. That the defendants should have reported known and alleged perpetrators to law enforcement or other organizations;
6. That known and alleged pedophiles should not have been with scouts unsupervised;
7. That the defendants had a duty to "err on the side of protecting children;"
8. That offenders were not prevented from having access to scouts;
9. That the defendants had a duty to prevent the alleged abuse;
10. That there was a failure to investigate;
11. That the defendants should have "ensured" that known and alleged pedophiles were not involved in "any youth program anywhere;"

The motions are denied in all other respects.

DATED: April 17, 2019

B. Lynn Winmill
United States District Judge