UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOES I-XIX, and JOHN ELLIOTT,<br><br>      Plaintiffs,<br><br>      v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to do business in Idaho,<br><br>      Defendants. | Case No. 1:13-cv-00275-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it plaintiffs' motion to exclude abusers and the police from the verdict form and defendant's motion to exclude Libey witnesses. The motions are fully briefed and at issue. For the reasons explained below, the Court will (1) deny that portion of plaintiffs' motion seeking to exclude the abusers from the verdict form but grant the motion to exclude the police; and (2) deny the motion to exclude Libey witnesses. The Court will address first the motion to exclude the abusers and the police from the verdict form.

**Memorandum Decision & Order – page 1**

# MOTION TO EXCLUDE ABUSERS AND POLICE FROM VERDICT FORM

## Analysis – Motion to Exclude Abusers from Verdict Form

Plaintiffs ask the Court to exclude from the verdict form any question asking the jury to make a comparative responsibility finding – that is, asking the jury to compare the responsibility of BSA and the Church for the plaintiffs' injuries with that of the men who abused them. The three Idaho statutes that govern the doctrine of comparative responsibility are set forth below:

*Idaho Code § 6-801*
> Contributory negligence or comparative responsibility shall not bar recovery in an action by any person or his legal representative to recover damages for negligence, gross negligence or comparative responsibility resulting in death or in injury to person or property, if such negligence or comparative responsibility was not as great as the negligence, gross negligence or comparative responsibility of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence or comparative responsibility attributable to the person recovering. Nothing contained herein shall create any new legal theory, cause of action, or legal defense.

*Idaho Code § 6-802*:
> The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence or comparative responsibility attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence or comparative responsibility attributable to the person recovering. Nothing contained herein shall create any new legal theory, cause of action, or legal defense.

*Idaho Code § 6-803(3), (4) & (5)*:
> (3) The common law doctrine of joint and several liability is hereby limited to causes of action listed in subsection (5) of this section. In any action in which the trier of fact attributes the percentage of negligence or comparative responsibility to persons listed on a special verdict, the court shall enter a separate judgment against each party whose negligence or comparative responsibility exceeds the negligence or comparative responsibility attributed to the person recovering. The negligence or comparative responsibility of each such party is to be compared individually to the negligence or comparative responsibility of the person recovering. Judgment

against each such party shall be entered in an amount equal to each party's proportionate share of the total damages awarded.
(4) As used herein, "joint tortfeasor" means one (1) of two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.
(5) A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, "acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.

Under this statutory regime, a defendant who has been found liable to the plaintiff for a tort bears liability only for that defendant's proportionate share of the total damages, and the plaintiff may not recover, except in limited circumstances, from one defendant for the share of damages allocable to the fault of another defendant or nonparty tortfeasor. The Idaho courts have extended the statute to apply to intentional torts and allow an allocation of fault between a negligent tortfeasor and an intentional tortfeasor. *Rausch v. Pocatello Lumber Co.*, 14 P.3d 1074 (Id.Ct.App. 2000).

This allocation creates a concern, however, that a jury will naturally assign a greater percentage of responsibility to the intentional tortfeasor. This very situation was addressed in the Restatement (Third) of Torts: Apportionment of Liability § 14 (2000):

> The modification of joint and several liability and the application of comparative responsibility to intentional tortfeasors create a difficult problem. When a person is injured by an intentional tort and another person negligently failed to protect against the risk of an intentional tort, the great culpability of the intentional tortfeasor may lead a factfinder to assign the bulk of responsibility for the harm to the intentional tortfeasor, who often will be insolvent. This would leave the person who negligently failed to protect the plaintiff with little liability and the injured plaintiff with little or no compensation for the harm. Yet when the risk of an intentional tort is the specific risk that required the negligent tortfeasor to protect the injured

> person, that result significantly diminishes the purpose for requiring a person to take precautions against this risk.

*Id.* at comment b. The Restatement solves this dilemma by making the tortfeasors jointly and severally liable: "A person who is liable to another based on a failure to protect the other from the specific risk of an intentional tort is jointly and severally liable for the share of comparative responsibility assigned to the intentional tortfeasor in addition to the share of comparative responsibility assigned to the person." *Id.* The Restatement explains that "persons who negligently fail to protect against the specific risk of an intentional tort should bear the risk that the intentional tortfeasor is insolvent." *Id.*

The Restatement recognized that "most courts" have recognized this dilemma but have solved it somewhat differently by "refus[ing] to permit assignment of a share of comparative responsibility to the intentional tortfeasor in a suit against the negligent party." *Id.* That was essentially the position Idaho courts took prior to the passage of the statutory scheme quoted above. *See Hickman v. Fraternal Order of Eagles*, 758 P.2d 704 (Id.Sup.Ct. 1988), *overruled by Idaho Dept. of Labor v. Sunset Marts, Inc.,* 91 P.3d 1111 (Id.Sup.Ct. 2004). In *Hickman,* heirs of two persons killed by an intoxicated driver brought an action to recover damages from the Fraternal Order of Eagles (Eagles), who provided alcohol at a Christmas party attended by William Davis, the driver, who consumed alcohol at the party before he caused the collision. Davis was not a party to the subsequent litigation, and the district court refused to put him on the verdict form so the jury could compare his responsibility with that of the Eagles. The jury returned a

verdict for the Eagles and the heirs appealed the decision to keep Davis off the verdict form. The Idaho Supreme Court affirmed, quoting the trial court's analysis as follows:

> The main issue in this case, the only issue in this case, is Eagles' negligence. If Eagles is one percent negligent, they are liable for everything. If Eagles is ninety-nine percent negligent as compared to Davis, they are liable for everything. If Eagles is zero percent negligent, there is nothing to compare it with. In effect, I think trying to compare Eagles to the non-party Davis is irrelevant and confusing.

758 P.2d at 707. But after *Hickman* was decided, the Idaho Legislature passed the statutory scheme quoted above, substantially limiting the applicability of joint and several liability. Subsequently, the Idaho Supreme Court overruled *Hickman* in *Sunset Marts,* a case with facts identical to *Hickman.* In *Sunset Marts,* the court held that the jury must allocate responsibility between the drunk driver and the vendors of alcohol. *Sunset Marts,* 91 F.3d at 1116-17. As *Sunset Marts* made clear, the only time the drunk driver could be kept off the verdict form would be in the infrequent circumstance where joint and several liability applied – that is, where the drunk driver acted as the vendor's agent or in concert with the vendor. *See Idaho Code § 6-803(5).* In this case, the plaintiffs have not argued in their briefing on this motion that the abusers were acting in concert with – or as agents of – the Church or BSA. Thus, the Court is assuming here that joint and several liability does not apply.

It is thus clear that Idaho has rejected the Restatement approach (include the intentional tortfeasor on the verdict form and apply joint and several liability) and the approach of most courts (refuse to include the intentional tortfeasor on the verdict form). Still, the dilemma remains – the jury will naturally allocate most of the responsibility to

**Memorandum Decision & Order – page 5**

the insolvent or unavailable intentional tortfeasor, leaving plaintiffs without a remedy, assuming the jury finds constructive fraud.

Curative instructions may be necessary here. This would include an instruction based on *Seppi v. Betty,* 579 P.2d 683 (Id.Sup.Ct. 1978). The instruction in *Seppi* informed the jury that if the allocation of responsibility to the plaintiff was greater than that allocated to the defendant, the plaintiff would receive nothing. *Id.* The *Seppi* decision's reasoning applies with equal strength to the issue here, informing the jury that their award of damages will be reduced by the percentage of responsibility they allocated to the abuser:

> It would be incredibly naive to believe that jurors, after having listened attentively to testimony of the parties and a parade of witnesses and after having heard the arguments of counsel, will answer questions on a special verdict form without giving any thought to the effect those answers will have on the parties and to whether their answers will effectuate a result in accord with their own lay sense of justice. With respect to most questions, the jury would have to be extremely dullwitted not to be able to guess which answers favor which parties. In those instances where the legal effect of their answers is not so obvious, the jurors will nonetheless speculate, often incorrectly, and thus subvert the whole judicial process. It is this latter problem, juries speculating on the effect of their answers, that creates a unique danger when the issues in a comparative negligence case in Idaho are submitted to a jury in a special verdict form.

579 P.2d at 690. By instructing the jury of the effect of their allocation of responsibility, the jury will be much less likely to make incorrect assumptions and render a verdict that truly matches their intent. The Court therefore intends to draft its instructions so that the jury fully understands that any percentage of responsibility allocated to the abuser will reduce plaintiffs' damages by that percentage.

**Analysis – Motion to Exclude Police from Verdict Form**

**Memorandum Decision & Order – page 6**

In the same motion, plaintiffs ask the Court to exclude the police from the verdict form. BSA did not respond to this request in its response brief, and the Church states that "[t]he police's involvement is not at issue in the only remaining claim against the Church, Doe XII's." *See Church Brief (Dkt. No. 473)* at p. 2. The Court will therefore grant the plaintiffs' motion to the extent it seeks to exclude the police from the verdict form.

## Conclusion

The Court will therefore deny that portion of plaintiffs' motion seeking to exclude the abusers from the verdict form but grant the motion to exclude the police. With regard to the abusers being on the verdict form, the Court will draft its jury instructions to inform the jury of the effect of any allocation of responsibility they make.

## MOTION TO EXCLUDE LIBEY WITNESSES

## Introduction

BSA has filed a motion to exclude any testimony from third-party witnesses related to allegations of abuse by former Scoutmaster Lawrence Libey. BSA argues that the allegations are not relevant because they fail to address any of the elements of constructive fraud. The testimony at issue is that of (1) David Eveland, a former Scoutmaster, (2) George Poleson, who was a Scout in Troop 156 where Libey was a Scoutmaster, (3) testimony of Does XX, XXIII, and XXIV who were abused by Libey, and (4) other persons related to Troop 156. The Court will review the testimony of each below.

## Dave Eveland

He will testify that he suspected Libey of sexually abusing Scouts after he saw Libey sleep with a Scout in a tent during a campout. He complained to the sponsoring organization – the Elks Lodge – and gave them an ultimatum that if Libey stayed as a leader, he (Eveland) would resign.

This testimony is relevant because BSA has not stipulated that Doe IV and Doe XVIII were abused by Libey. Eveland's testimony that he saw Libey sleeping with a Scout in a tent (with no other adult in the tent) during a campout is some evidence confirming the accounts of abuse by the plaintiffs here, Doe IV and Doe XVIII. The Court will therefore deny the motion to exclude Eveland's testimony.

**George Poleson**

Poleson will testify that in 1969 or 1970, he went with his father to a meeting with Unit Chairman Phil Weisgerber to address rumors about Libey sexually abusing Scouts. Poleson was a 12-year boy at the time and waited outside Weisgerber's office while his father, Libey, and other fathers, met with Weisgerber. Poleson could not hear what the men discussed but recalls that when the meeting was over, his father came out and told him "if he [Libey] touches you, you will let us know, and we will take care of it right now." *See Poleson Deposition (Dkt. No. 300 – Exh. 60)* at p. 31. Poleson testified that another father who had been in the meeting said the same thing to his son who was waiting with Poleson outside the meeting room. *Id.*

A reasonable inference from Poleson's testimony is that the men were discussing rumors of Libey's sexual abuse of Scouts. In that sense, Poleson's testimony is relevant because it confirms plaintiffs' testimony of abuse, a fact at issue in this case.

**Memorandum Decision & Order – page 8**

But this reasonable inference depends entirely on the father's statement ("If he touches you . . .") being admissible. Without that statement, Poleson's testimony is reduced to inadmissible speculation about what men discussed behind closed doors. *See Poleson's Deposition, supra,* at p. 30 ("And we kind of really didn't know what was going on"). But with the father's statement, Poleson's testimony rises above mere speculation – the father's statement confirms Poleson's own recollection of the meeting's purpose. *Id.* ("[I was aware of the rumor of Libey's abuse] because of what my father and Bill's father said when they came out"). So, the key issue is whether Poleson's recollection of his father's statement is admissible.

The father's statement is being introduced to show his concern that Libey is an abuser, and so is being offered for its truth (that he was concerned) and is therefore hearsay. But an exception applies for a statement "of the declarant's then-existing state of mind" – the statement shows the father's then existing state of mind, i.e., his concern that Libey is an abuser. *See Rule of Evidence 803(3).* The father's statement is admissible, and thus Poleson's testimony about his recollection of the meeting is admissible. The motion to exclude this testimony will be denied.

**Does XX, XXIII, & XXIV:**

All three of these witnesses will testify that they were abused by Libey in the years between 1970 and 1972. This testimony directly confirms plaintiffs' testimony of abuse, a fact at issue, and is therefore relevant. The motion to exclude this testimony will be denied.

**Other Third-Party Witnesses**

**Memorandum Decision & Order – page 9**

Plaintiffs served a witness disclosure that identified other third-party witnesses who may testify as having heard that Scouts in Troop 156 were abused. For example, Marcy Jacobson may testify that her brother was abused by Libey. Gerald Conway recalls rumors about kids going to Libey's trailer. David Lockhert remembers "jokes among the boys that they should `watch themselves' if they were invited to Libey's trailer." Richard Nice believes "Libey abused kids in the troop."

BSA moved to exclude this testimony and plaintiffs did not address that part of the motion in their response brief. The Court does not have any deposition excerpts or other material on which to base a ruling concerning these witnesses. While the plaintiffs' failure to offer any support for these witnesses might normally warrant exclusion, the Court would be excluding evidence in complete ignorance of the context of the testimony being excluded. The Court will therefore deny the motion to exclude at this time without prejudice to the right of BSA to raise these same grounds at trial.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to exclude the perpetrators and other unnamed wrongdoers from the verdict form (docket no. 429) is GRANTED IN PART AND DENIED IN PART. It is granted as to the police but denied in all other respects. This denial is conditioned on the Court's intent to draft the jury instructions to fully inform the jury of the effect of their verdict.

IT IS FURTHER ORDERED, that the motion to exclude Libey witnesses (docket no. 382) is DENIED.



DATED: April 17, 2019

_____
B. Lynn Winmill
United States District Judge

**Memorandum Decision & Order – page 11**