UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOES I-XIX and JOHN ELLIOTT,<br><br>    Plaintiffs,<br><br>    v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to do business in Idaho,<br><br>    Defendants. | Case No. 1:13-cv-00275-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motions in Limine regarding the testimony of Plaintiffs' expert, Dr. David L. Corwin, M.D. (Dkts. 400, 474), and Church Defendants' Motion in Limine regarding Course of Life and Loss of Faith Damages (Dkt. 397). Both motions are at issue and fully briefed. For the reasons described below, the Court will

deny Defendants' motions regarding Dr. Corwin (Dkts. 400, 474), and will partially grant the Church Defendants' motion regarding Course of Life and Loss of Faith Damages (Dkt. 397).

## LEGAL STANDARD

Whether and to what extent Dr. Corwin may testify at trial is addressed under the well-known standard first enunciated in *Daubert* and its progeny, but now set forth in Rule 702 of the Federal Rules of Evidence. Rule 702 establishes several requirements for permitting expert opinion. First, the evidence offered by the expert must assist the trier of fact either to understand the evidence or to determine a fact in issue. *Primiano v. Cook*, 598 F.3d at 563, (9th Cir.2010); Fed. R. Evid. 702. "The requirement that the opinion testimony assist the trier of fact goes primarily to relevance." *Id*.

Additionally, the witness must be sufficiently qualified to render the opinion. *Id*. If specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified by knowledge, skill, experience, training or education may offer expert testimony where: (1) the opinion is based upon sufficient facts or data, (2) the opinion is the product of reliable principles and methods; and (3) the witness has applied those principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms*., Inc., 509 U.S. 579, 592–93, (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, (1999).

The inquiry is a flexible one. *Primiano*, 598 F.3d at 564, (9th Cir.2010). Ultimately, a trial court must "assure that the expert testimony both rests on a reliable

foundation and is relevant to the task at hand." *Id*. (Internal quotation and citation omitted). Finally, exclusion of expert testimony is the exception rather than the rule. Fed. R. Evid. 702, Adv. Comm. Notes (2000).

## ANALYSIS

First, Defendants argue that: (1) Dr. Corwin's testimony is irrelevant and unhelpful under Rule 702; (2) Dr. Corwin's opinions regarding loss of faith, loss of life, institutional betrayal, and betrayal trauma are inadmissible; (3) Dr. Corwin's methodology is unreliable; and (4) Dr. Corwin's opinions are inadmissible under Rule 703. *See Def.'s Br.*, Dkt. 400-1, Dkt. 474; *see also Def.'s Reply,* Dkt 520, Dkt. 520. Second, the Church Defendants argue that that court should generally exclude all evidence and argument concerning loss of life and loss of faith. *Def.'s Br.*, Dkt. 397; *Def.'s Reply,* Dkt. 494.

1. **Dr. Corwin's Expert Opinions**

    A. *Dr. Corwin's Testimony Is Relevant Under Rule 702*

Expert witness testimony is only admissible if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert opinion testimony is relevant if it "logically advance[s] a material aspect of the party's case." *Estate of Barabin v. Asten Johnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014)(en banc). Expert testimony that does not relate to any issue in a case is not relevant, and therefore, not helpful to a jury. *Daubert*, 509 U.S. at 591.

Defendants argue that Dr. Corwin's testimony is irrelevant and thus inadmissible under Rule 702. *Def.'s Br.* at 7, Dkt. 400-1; *see also Def.'s Br.* at 8, Dkt. 474-1. Defendants argue that because Dr. Corwin's opinions focus on the damages resulting from sexual abuse, they are not relevant to Plaintiffs' claims for constructive fraud. *Id.* As the Court has ruled previously in this case, Plaintiffs may seek nonpecuniary damages that are not limited to those suffered after that date Plaintiffs discovered the alleged fraud. *See* Dkts. 455, 549 at 2-4. Dr. Corwin's deposition reflects that he will testify regarding damages that followed as a result of the alleged fraud, in particular the "sexual abuse and associated circumstances and things that went with it." *Corwin Depo*. at 183:10-17, Dkt. 282-25. Because the Court has ruled these types of damages are available to the Plaintiffs, and Dr. Corwin's testimony describes those damages and their connection to the alleged fraud, his testimony will be helpful to the jury, and is relevant under Rule 702.

Defendants also argue that Dr. Corwin's testimony is unhelpful because he does not distinguish which damages initially resulted from the sexual abuse and which damages arose later. *Def.'s Br*. at 11, Dkt. 400-1. Defendants believe his testimony will be misleading because Dr. Corwin "lumps all of the alleged damages together." *Id.* But such subjects are appropriate for "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," not wholesale exclusion of Dr. Corwin's testimony. *See Daubert*, 509 U.S. at 595.

Finally, Defendants argue that Dr. Corwin's opinions lack reasonable certainty and will therefore not aid the jury in determining what injuries were caused by the alleged constructive fraud. *Def.'s Br.* at 11, Dkt. 400-1. But each of Dr. Corwin's reports, reflects opinions expressed to a "reasonable degree of medical certainty. Dkt. 403-1, at 6; Dkt. 474-6, at 2; Dkt. 474-7, 2. If there is any conflicting evidence in Dr. Corwin's deposition or reports, then again, it is a matter for cross-examination, not exclusion.

### B. Dr. Corwin's Opinions Regarding Loss of Faith, Loss of Life, Institutional Betrayal, and Betrayal Trauma

The subject of loss of faith and loss of life has also been thoroughly addressed in a separate Motion in Limine (Dkt. 397). Therefore, the Court will address the loss of life and loss of faith issue in the second part of this Order which speaks directly to that topic.

In addition, Defendants ask the Court to exclude Dr. Corwin's opinions regarding "institutional betrayal" and "betrayal trauma." *Def.'s Br.* at 4, Dkt. 520. They argue that "institutional betrayal" is merely a "stand-in for loss of faith as against the church." *Id.* citing Dkts. 397, 494. As explained in more detail below, the Court will not exclude Dr. Corwin's opinions on these categories of damages. *See infra* § 2(B).

### C. Dr. Corwin's Methodology and Reliability

Defendants further argue Dr. Corwin's opinions are not based on reliable scientific methodology because Dr. Corwin chooses not to follow the forensic standards developed by the American Academy of Psychiatry and the Law (AAPL). *Def.'s Br.* at 5, Dkt. 474-1. Instead, Dr. Corwin uses his own self-developed methodology that incorporates AAPL

guidelines and also his own technique derived from his own experience in the field. *Pl.'s Resp.* at 11, Dkt. 501. Defendants argue that Dr. Corwin's deviation from AAPL guidelines constitutes an unreliable methodology for several reasons. *Def.'s Br.* at 5, Dkt. 474-1.

First, Defendants argue that a deviation from AAPL standards makes Dr. Corwin's opinions unreliable because AAPL guidelines reflect a "consensus among members and experts about the principles and practices applicable to the conduct of forensic assessments." *Id.* at 6. Plaintiffs counter that the AAPL guidelines themselves expressly state they are merely *guidelines*, and are not the exclusive standard for forensic evaluations. *Pl.'s Resp..* at 11, Dkt. 501. Even though Dr. Corwin's methodology strays "somewhat" from AAPL guidelines, his methodology is derived from his "vast experience" in cases involving child sexual abuse, and is based on AAPL guidelines. *Id.* at 12. Dr. Corwin's experience and professional judgement has been "honed over twenty years [of] conducting, researching, teaching, writing about, and presenting forensic interviewing. . .." *Pl.'s Resp.* at 11, Dkt. 501; *see also Corwin CV,* Dkt. 474-4. Dr. Corwin has been board certified with the American Board of Psychiatry and Neurology since 1998; and he has evaluated and testified in 15 civil and criminal cases in the last five years. *Id.* Although Dr. Corwin deviates from the AAPL guidelines, the Court finds his methodology is sufficiently reliable under *Daubert* in light of his experience.

Next, Defendants argue that Dr. Corwin's failure to request tests or to check the validity of tests upon which he relies make his opinions unreliable. *Def.'s Br.* at 7, Dkt.

474-1. Defendants assert that Dr. Corwin's testimony is based solely on the results of psychological testing conducted by another psychologist, Brian Thorn, Ph.D, and Dr. Thorn's interpretations. *Def.'s Br.* at 14, 400-1. But Dr. Corwin *did* in fact assess the validity of Dr. Thorn's testing and the underlying data. *Pl.'s Br.* at 14, Dkt. 501. Dr. Corwin considered whether Dr. Thorn's testing was credible and whether or not to rely on the testing results. *Id.* at 13. Indeed, one of the tests conducted by Dr. Thorn, the "Minnesota Multiphasic Personality Inventory" (MMPI-2) test, includes a "validity scale" which assesses whether a subject is over or under-stating symptoms. *Id.* Finally, Dr. Corwin conducted a "lengthy forensic interview" that comprehensively reviews the medical and mental health treatment records. *Id.* Thus, Dr. Corwin did assess the validity of Dr. Thorn's tests and the underlying data used for those tests. If discrepancies exist in Dr. Corwin's evaluations, cross-examination is the proper vehicle to explore them.

Third, Defendants argue that Dr. Corwin's use of leading and suggestive questions to solicit information during his interview makes his methodology unreliable. *Def.'s Br.* at 8, Dkt. 474-1. Defendants highlight that the AAPL guidelines state that an "evaluator should guard against leading questions or questions that limit responsiveness from the evaluee." *Id.* Defendants argue that these leading questions "precluded a neutral evaluation. . .." *Id.* at 8-9. However, Dr. Corwin's methodology uses both "open-ended . . . and specific" questions. *Pl.'s Resp.* at 14, Dkt. 501. In light of his experience, Dr. Corwin has found that use of both types of questioning is necessary and appropriate in interviewing adults. *Id.* It is apparent that Dr. Corwin was aware of the risks associated

with using leading questions and had a reason for using them in this context. The Court does not find that Dr. Corwin's decision to use open-ended and specific lines of questioning renders his opinions unreliable.

Finally, Defendants argue that Dr. Corwin does not does not make any diagnosis or differential diagnosis. Specifically, Defendants argue that Dr. Corwin's lack of diagnosis renders his opinion "incomplete." *Def.'s Br.* at 10, Dkt. 474-1. However, the AAPL guidelines caution against legal overemphasis and reliance on diagnosis. *Pl.'s Resp.* at 16, Dkt. 501. Plaintiffs argue that Dr. Corwin's role as an expert witness is not to diagnose the Plaintiffs as a treating psychiatrist might do. *Pl.'s Resp.* at 16, Dkt. 501. Instead, Dr. Corwin's opinion is to determine what role the sexual abuse played in the Plaintiffs' current symptoms. *Id.* citing Dkt. 282-25, at 240:21-241:6. Although Dr. Corwin did not utilize a "DSM diagnosis," Dr. Corwin cited reliable foundation for his opinions. *Id.* Here, Dr. Corwin's decision not to provide a DSM was based upon his reliable ascription to AAPL cautions *against* DSM diagnosis. *Id.* If Defendants believe that a DSM diagnosis is in some way superior to Dr. Corwin's methodology, then Defendants may illustrate the distinction with effective cross-examination.

### D. Dr. Corwin's Opinions Under Rule 703

Defendants argue that Dr. Corwin's opinions are a mere conduit for psychologist, Dr. Thorn's opinions. *Def.'s Br.* at 14, Dkt. 474-1. Federal Rule of Evidence 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

> But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

It is permissible for expert witnesses to base their opinions on otherwise inadmissible facts or data. *See e.g. Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984). In assessing whether proffered expert opinions satisfy Rule 703, courts should analayze: (1) "whether the facts are of a type reasonably relied upon by experts in the particular field," and (2) "whether the probative value of the underlying data substantially outweighs its prejudicial effect." *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1061 (9th Cir. 2003).

First, Defendants argue that Dr. Corwin's reliance on Dr. Thorn's data was not reasonable. *Def.'s Br.* at 15, Dkt. 400-1. Dr. Corwin relied upon two tests performed by Dr. Thorn: a "Trauma Symptom Inventory" test and a "Minnesota Multiphasic Personality Inventory" test. *Def.'s Br.* at 14, Dkt. 400-1. Dr. Thorn interpreted the results of the tests and Dr. Corwin used the data in developing his opinions. *Id.* This kind of psychological testing and the resulting data is exactly the type of background forensic psychiatrists reasonably rely on in forming their opinions. *Pl.'s Resp.* at 20, Dkt. 501 citing *Turner* 338 F.3d at 1061. Plaintiffs point out that Defendants' own expert relied upon similar testing and data in forming an opinion. *Id.* Indeed, Defendants admit that their own expert, Dr. LaCroix, "similarly relies on psychological testing by another to reach her conclusions." *Def.'s Reply,* Dkt. 520. As Dr. Corwin acknowledged, Dr. Thorn's data is as only one piece of a larger puzzle in reaching his opinions. *Pl.'s Resp.* at

20, Dkt. 501 citing Dkt. 282-25, at 71:1-3, 226:6-14, 269:1-5, 270:10-19. Thus, Dr. Corwin's opinions constitute an analysis of Dr. Thorn's data, not a mere conduit for Dr. Thorn's interpretations. Dr. Corwin's reliance on Dr. Thorn's data is reasonable and typical of forensic physiatrists, which meets the first prong of the *Turner* test.

Next, Defendants argue that Dr. Corwin's opinions are prejudicial, bear the "imprimatur of scientific rigor," and would thus inappropriately influence the jury. *Def.'s Br.* at 17, Dkt. 400-1. Defendants argue that the psychological testing done by Dr. Thorn is the type of substantive evidence excluded in *Turner*. *Id.* citing *Turner* 338 F.3d at 1062. But here again, Plaintiffs correctly point out that Dr. Corwin's ultimate opinions are based on a confluence of factors, not just Dr. Thorns psychological tests. *Pl.'s Resp.* at 20, Dkt. 501. Plaintiffs also assure the Court that Dr. Thorn's tests and underlying data will no be offered to the jury as independent proof of Plaintiffs' damages. *Id.* The Court finds Dr. Corwin's opinions satisfy the *Turner* test, are not a mere conduit, and therefore, do not violate Rule 703.

### E. Confusing the Issues Under Rule 403

Next, Defendants argue that Dr. Corwin's testimony will only confuse issues and mislead the jury. *Def.'s Br.* at 12, Dkt. 400-1 citing Fed. R. Evid. 403. The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. Here, Defendants argue that Dr. Corwin's opinions might confuse the issues of constructive fraud, because Dr. Corwin's opinions concern "personal injury" damages. *Def.'s Br.* at

13, Dkt. 400-1. As indicated above, the Court has already ruled Plaintiffs are allowed to bring nonpecuniary damages in this case, and finds Dr. Corwin's opinions on damages will not prejudice or confuse the jury under Rule 403.

2. **Course of Life and Loss of Faith Damages**

The Church Defendants separately seek to exclude evidence pertaining to Doe XII's damages for "loss of faith" and "loss of established course of life." *Def.'s Br.* at 2, Dkt. 397-1.

### A. Loss of Life

Doe XII has claimed "damages relating to the loss of established course of life." *Def.'s Br.* at 3, Dkt. 397. As the Court has pointed out earlier in this litigation, loss of established course of life is a creature of Montana law, Plaintiff has not offered any factual or legal support for such damages, and any claim for damages under such a theory has therefore been waived. *See Hern v. Safeco Ins. of Ill.*, 125 P.3d 597, 605 (Mont. 2005); Dkt. 336 at 36. Nevertheless, Doe XII may offer evidence of emotional distress and other psychological injuries. For example, Doe XII may testify that he "has suffered depression throughout his life," experienced "issues in his marriage," and struggled to "hold a steady job." Dkt. 468 at 3. The Court will therefore grant Defendants' motion to exclude evidence to the extent that evidence is related strictly to the cause of action for "loss of established course of life." *Id.*

### B. Loss of Faith

Defendants also seek to exclude damages related to Doe XII's alleged loss of faith in the Church and the BSA. *Def.'s Br.* at 3, Dkt. 397 citing *Doe XII Dep.* Dkt. 183-8, at 147:6-21. First, Defendants argue that Idaho law does not provide a basis for recovery of damages for the loss of faith. *Id.* at 5. Indeed, Plaintiffs could not cite, nor did they rely on any Idaho law to support a recovery of damages for loss of faith. *Pl.'s Br.* at 3, Dkt. 468. Instead, Plaintiffs argue that Doe XII's loss of faith or religious beliefs is evidence of his emotional distress and psychological injury damages. *Id.* Plaintiffs rely on Idaho Jury Instruction 9.01 which allows a jury to consider "mental pain and suffering, past and future" in determining the amount of noneconomic damages to award. *Id.* The Court agrees with Plaintiffs that a loss of faith might be relevant to a person's emotional distress and psychological injury damages, and will allow the Plaintiff to introduce evidence of "loss of faith" as it relates to his emotional distress.

Defendants further argue that allowing for loss of faith damages would violate the "First Amendment's protection of religious organizations to define their own doctrinal principles." Dkt. 397-1 at 6. But permitting the Plaintiffs to examine the emotional distress and psychological damages he suffered in connection with alleged sexual abuse in no way involves the matters of church government, faith, or religious doctrine, and does not offend the First Amendment.

Therefore, the Court will grant Defendants' motion in part, and exclude evidence of damages relating to "loss of established course of life." But the Court will deny Defendants' motion to the extent it seeks to exclude evidence of "loss of faith," so long

as that issue is addressed as part of Plaintiff's general emotional or psychological damages.

## ORDER

In accordance with the Memorandum Decision set forth above, NOW THEREFORE IT IS HEREBY ORDERED that:

1. Defendants' Motions (Dkts. 400, 474) are **DENIED**.

2. Defendants' Motion (Dkt. 397) is **GRANTED IN PART and DENIED IN PART.**

DATED: May 14, 2019

_____
B. Lynn Winmill
U.S. District Court Judge